664 A.2d 577

**Vicki FEWELL, Appellant,**

**v.**

**Lance BESNER, M.D., and Saint Vincent
Health Center, Appellees.**

Superior Court of Pennsylvania.

Argued May 18, 1995.

Filed Aug. 24, 1995.

560

Michelle H. Kelly, Erie, for appellant.

Ray F. Middleman, Pittsburgh, for Lance Besner, M.D., appellee.

T. Warren Jones, Erie, for Saint Vincent Health Center, appellee.

Before POPOVICH, HUDOCK and OLSZEWSKI, JJ.

POPOVICH, Judge:

Vicki Fewell appeals from an order entered in the Court of Common Pleas of Erie County granting appellees' (Lance Besner, M.D. and St. Vincent Health Center) preliminary objections in the nature of a demurrer. Appellant now claims that the lower court erred in dismissing her complaint because: (1) appellees are not entitled to immunity pursuant to the Child Protective Services Law ("CPSL") [1] as the immunity provision conflicts with the confidentiality provisions of the Mental Health Procedures Act ("MHPA") [2] and with the psychotherapist-patient privilege; [3] (2) immunity from suit should be raised as an affirmative defense not by preliminary objection and; (3) a question existed as to whether she suffered the physical injuries necessary to support a cause of action for infliction of emotional distress. After careful review, we affirm.

Appellant Vicki Fewell brought this lawsuit as a result of appellee, Dr. Lance Besner's, disclosure of confidential information to the Erie County Coroner and testimony that he gave at appellant's criminal trial. The events leading up to the disclosure of this information began with the suffocation death of appellant's four month old son on December 11, 1990. An initial police investigation of the incident by the Pennsylvania State Police and the Coroner's Office found that the death was accidental.

1. 23 Pa.C.S.A. § 6311 *et seq.*
2. 50 P.S. § 7111 *et seq.*
3. 42 Pa.C.S.A. § 5944.

Subsequent to her son's death, appellant was plagued with severe bouts of depression, resulting in suicide attempts on several occasions. Hospitalization was required to treat these bouts of depression and, ultimately, on January 12, 1992, after appellant sought voluntary treatment, appellee Dr. Besner had her involuntarily committed pursuant to the MHPA.[4] During this period of involuntary commitment, appellant revealed to Dr. Besner that her son's death was not accidental, but occurred when she suffocated the child to cease his crying. Dr. Besner conveyed this information to the Erie County Coroner resulting in the investigation being reopened and appellant being charged with criminal homicide.

Appellant then filed this lawsuit claiming that she was entitled to damages from appellees because their actions had caused her emotional distress. Dr. Besner and St. Vincent Medical Center filed preliminary objections in the nature of a demurrer.[5] The lower court granted appellees' preliminary objections finding that appellees were immune from liability and that appellant did not state a cause of action for infliction of emotional distress. Appellant brought this timely appeal which raises several challenges to the propriety of the demurrer.

Before addressing these challenges, we note our standard of review:

When reviewing an order granting preliminary objections in the nature of a demurrer, an appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer.

4. The MHPA establishes procedures for involuntary treatment and hospitalization of mentally ill persons. 50 Pa.S.A. §§ 7103–7503.

5. Appellant filed no responsive preliminary objections to appellees' preliminary objections.

*Jackson v. Garland,* 424 Pa.Super. 378, 622 A.2d 969 (1993) (citations omitted).

Appellant first alleges that appellees were not entitled to immunity pursuant to the CPSL because the immunity provisions conflict with the psychotherapist-patient privilege and the confidentiality provisions of the MHPA. We disagree.

Certain persons are required to report suspected child abuse pursuant to the CPSL:

> Persons who, in the course of their employment, occupation or practice of their profession, come into contact with children shall report or cause a report to be made ... when they have reasonable cause to suspect, on the basis of their medical, professional or other training and experience, that a child coming before them in their professional or official capacity is an abused child. Except with respect to confidential communications made to an ordained member of the clergy ... the privileged communication between any professional person required to report and the patient or client of that person shall not apply to situations involving child abuse and shall not constitute grounds for failure to report as required by this chapter.

23 Pa.C.S.A. § 6311(a).[6]

> The immunity provision of the CPSL specifically provides: A person, hospital, institution, school, facility, agency or agency employee that participates in good faith in the making of a report, cooperating with an investigation, testifying in a proceeding arising out of an instance of suspected child abuse, ... and any official or employee of a county agency who refers a report of suspected abuse to law

---

**6.** The CPSL also specifies which persons are required to report incidents of suspected abuse:

> Persons required to report ... include but are not limited to, any licensed physician, osteopath, medical examiner, coroner, ... hospital personnel engaged in the admission, examination, care or treatment of persons [or] ... mental health professional.

23 Pa.C.S.A. § 6311(b).

Hospitals are encompassed within this section as well. *See, Heinrich v. Conemaugh Valley Memorial Hospital,* 436 Pa.Super. 465, 648 A.2d 53 (1994).

enforcement authorities or provides services under this chapter shall have immunity from civil and criminal liability that might otherwise result by reason of those actions. 23 Pa.C.S.A. § 6318(a).

There is a presumption that a person making a report of suspected child abuse acted in good faith. 23 Pa.C.S.A. § 6318(b).

■ Here, neither Dr. Besner nor St. Vincent Health Center were required to report incidents of suspected child abuse pursuant to § 6311(a) of the CPSL. The plain language of this section makes it clear that only those who come into contact with abused children are required to report incidents of abuse. However, appellees are entitled to immunity pursuant to the good faith provisions of § 6318. Appellees' good faith is evident from a reading of Fewell's complaint wherein she admitted that she "confided to Dr. Besner that she had intentionally suffocated her infant son." (Complaint ¶ 14). Dr. Besner's reporting of the real circumstances surrounding the death of Fewell's son was done in response to Fewell's admission to him, and is uncontradicted evidence of good faith. Also, appellant has not alleged that appellees lacked good faith in reporting the information. Thus, the lower court correctly concluded that appellees were entitled to immunity from civil liability. *Cf, Heinrich v. Conemaugh Valley Hospital,* 436 Pa.Super. 465, 648 A.2d 53 (1994) (holding that hospital and its agents were entitled to immunity under § 6318 of the CPSL because plaintiffs failed to overcome the presumption that the defendant's acted in good faith).

■ However, appellant argues that the above stated immunity provision in the CPSL conflicts with the psychotherapist-patient privilege and the confidentiality provisions of the MHPA.[7] The psychotherapist-patient privilege provides:

7. We note that a panel of this Court ruled in the companion criminal case, *Commonwealth v. Fewell,* 439 Pa.Super. 541, 654 A.2d 1109 (1995), that Dr. Besner breached the psychotherapist-patient privilege by revealing Appellant's confidential communication that she intentionally suffocated her infant son. *Id.* at 1115. Accordingly, we held "that the trial court erred by allowing Dr. Besner to testify on behalf of the

> No psychiatrist or person who has been licensed ... to practice psychology shall be, without the written consent of his client examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944.

The confidentiality provision of the MHPA specifies:

> All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
>
>> (1) those engaged in providing treatment for the person;
>>
>> (2) the county administrator, pursuant to section 110 (footnote omitted);
>>
>> (3) a court in the course of legal proceedings authorized by this act; and
>>
>> (4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.
>
> In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent ...

50 Pa.S.A. § 7111.

Here, we do not find a conflict between these confidentiality provisions and the immunity provision in the CPSL when we

Commonwealth and disclose the confidential information he obtained during the course of Appellant's psychiatric treatment." *Id.* Under the circumstances, however, we ruled that such error was harmless since Dr. Besner's testimony was cumulative of other, untainted evidence presented by the Commonwealth. *Id.* at 1117.

In the criminal appeal neither party raised the issue presented by Appellant in the present case as to whether the immunity provisions of the CPSL conflict with the confidentiality provisions of the MHPA or the psychotherapist-patient privilege. Therefore, in the companion criminal case this Court was not required to harmonize the CPSL with the MHPA and psychotherapist-patient privilege.

examine the decisions of courts in other jurisdictions faced with analogous issues. These courts have concluded that similar immunity provisions in their child protection laws prevail over privileged communication laws. For example, in *Gross v. Myers*, 229 Mont. 509, 748 P.2d 459 (1987), the plaintiff, Mrs. Gross, related to her therapy group that her husband had sexually abused her daughters approximately sixteen years earlier. *Id.* at 459. Mrs. Gross was under the impression that all matters raised in the group would be held in confidence. *Id.* However, the group therapist, Ms. Myers, reported the incidents to state authorities after Mrs. Gross refused to report the incidents. *Id.* No further investigation was made of the incident because of the remoteness of the incident. *Id.* Mrs. Gross then filed a lawsuit against Ms. Myers for intentional infliction of emotional distress and various other causes of action. *Id.* Ms. Myers' motion for summary judgment was granted on the basis that she was immune from liability pursuant to the reporting provisions of Montana's child protection statute. *Id.* at 459–460. The Supreme Court of Montana held that summary judgment was properly entered by the lower court. *Id.* at 462.

The court analyzed the reporting and immunity provisions of the child abuse statute and found that Ms. Myers, as a licensed social worker, was required to report incidents of suspected abuse. *Id.* at 460. The court stated that simply because the abuse had occurred several years earlier did not excuse Ms. Myers from the reporting requirements because the possibility existed that Mr. Gross would abuse his grandchildren. *Id.* at 461. Thus, summary judgment had been properly entered. *Id.* at 462.

Here, we are faced with a similar situation. Even though Dr. Besner was not subject to the MPSL's reporting requirements, he informed the Coroner of the circumstances surrounding the death of appellant's infant son and acted in good faith in so doing. Appellant also had another child at home who could have been the victim of abuse. Moreover, appellant does not allege that Dr. Besner lacked good faith in making the report. Clearly, Dr. Besner's interest was to carry out his

duties under the CPSL and prevent any further abuse. The express purpose of the CPSL would have been breached if Dr. Besner had not reported the incident. *See,* 23 Pa.C.S.A. § 6302(b); *In the Interest of J.R.W.,* 428 Pa.Super. 597, 631 A.2d 1019 (1993) (stating that the express purpose of the CPSL is to prevent further abuse of children through the use of quick and effective reporting of suspected abuse). Thus, the psychotherapist-patient privilege and the confidentiality provisions of the MHPA must yield to the immunity provision of the CPSL. *Cf., People v. John B.,* 192 Cal.App.3d 1073, 237 Cal.Rptr. 659 (1987) (holding that psychotherapist-patient privilege is not absolute and must yield to the reporting requirements outlined in California's Child Abuse Reporting Act); *State ex rel. D.M. v. Hoester,* —— Mo. ——, 681 S.W.2d 449 (1984) (holding that child abuse reporting statute vitiated physician-patient privilege and psychiatrist could be compelled to reveal alleged sexual abuser's medical records in a civil action for damages); *People v. Gearhart,* 148 Misc.2d 249, 560 N.Y.S.2d 247 (1990) (holding that the overriding purpose of child abuse reporting statutes is to protect children and the physician-patient privilege cannot be asserted when there is a conflict with child abuse reporting requirements).

Next, appellant contends that the lower court erred in holding that she failed to state a cause of action upon which relief could be granted for infliction of emotional distress.[8] We can summarily dismiss the claim for negligent infliction of emotional distress in light of our holding in *Armstrong v. Paoli Memorial Hospital,* 430 Pa.Super. 36, 633 A.2d 605 (1993), *allocatur denied,* 538 Pa. 663, 649 A.2d 666 (1994), in which we held that a plaintiff must demonstrate some type of physical injury in order to sustain a cause of action for negligent infliction of emotional distress. Here, appellant merely claims that her incarceration is a "physical impact." We can find no support for this unsubstantiated assertion of

8. Appellant does not specify whether her claim is for intentional infliction of emotion distress or negligent infliction of emotional distress. However, this does not affect our disposition of this issue.

physical injury and appellant acknowledges that this may not constitute physical injury.

■ Appellant also does not state a cause of action for intentional infliction of emotional distress. The requirements of this tort are enumerated in § 46 of the RESTATEMENT (SECOND) OF TORTS. The status of this cause of action is unclear in Pennsylvania as some appellate courts have adopted RESTATEMENT § 46, but our supreme court has not. *See, Johnson v. Caparelli,* 425 Pa.Super. 404, 625 A.2d 668 (1993). However, our supreme court has acknowledged RESTATEMENT § 46. *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987). We make no pronouncement as to whether RESTATEMENT § 46 is being adopted by this court because appellant does not state a cause of action for intentional infliction of emotional distress.

Section 46 of the RESTATEMENT specifically provides: (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

RESTATEMENT (SECOND) OF TORTS § 46(1).

A plaintiff must also show physical injury or harm in order to sustain a cause of action for intentional infliction of emotional distress. *Kazatsky, supra* at 995.

Here, appellant alleges no physical harm, nor does she allege that appellees' actions were extreme or outrageous. She simply states that she suffered severe emotional distress. In light of the aforestated, the trial court correctly found that appellee failed to state a cause of action upon which relief could be granted for either negligent infliction of emotional distress or intentional infliction of emotional distress.

■ Finally, appellant contends that it was improper for the lower court to grant appellees' demurrer because the issue of statutory immunity should have been raised as an affirmative defense not as a preliminary objection. We disagree.

570

■ The affirmative defense of "immunity from suit" must be raised in a responsive pleading under the heading of "New Matter". Pa.R.C.P. No. 1030, 42 Pa.C.S.A. Where a party improperly raises "immunity from suit" in preliminary objections and the opposing party does not object to this defect, then the question of immunity from suit may be decided by the court. *Bloom v. Dubois Regional Medical Center,* 409 Pa.Super. 83, 90–91 n. 4, 597 A.2d 671, 675 n. 4 (1991) (citations omitted). Here, appellees improperly raised immunity from suit by preliminary objection. However, appellant did not object to this defect and the trial court properly granted appellees' demurrer, even though it was raised via preliminary objection. Thus, the trial court did not err ruling on appellees' preliminary objections.

Order affirmed.