

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-16-1996

# Hahnemann Univ. Hosp. v. Edgar

Precedential or Non-Precedential:

Docket 95-1667

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Hahnemann Univ. Hosp. v. Edgar" (1996). *1996 Decisions.* Paper 248.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/248

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-1667


HAHNEMANN UNIVERSITY HOSPITAL,

Petitioner

v.

CHARLES C. EDGAR and LAURA D.G. EDGAR,
conservators of the person and estate of
SHANE EDGAR, and CHARLES C. EDGAR
and LAURA D.G. EDGAR, in their own rights,
Respondents

The Honorable Raymond J. Broderick,
United States District Judge,

Nominal Respondent


On Petition for a Writ of Mandamus to the United States
District Court for the Eastern District of Pennsylvania
(Related to D.C. Civil Action No. 94-3515)


Argued November 30, 1995

BEFORE:  GREENBERG and COWEN, Circuit Judges, and
PARELL, District Judge[0]

(Filed:  January 16, l996)


Sharon M. Reiss (argued)
Kimberly A. Cummings
Sheila A. Haren
Post & Schell, P.C.
19th Floor
1800 J.F.K. Boulevard

_____

[0] Honorable Mary Little Parell, Judge of the United States District Court for the District of New Jersey, sitting by designation.

1

Philadelphia, PA  19103

Attorneys for Petitioner

Fred T. Magaziner (argued)
Jill L. Russin
Dechert, Price & Rhoads
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA  19103

Attorneys for Respondents

OPINION OF THE COURT

GREENBERG, Circuit Judge.

Respondents Charles C. Edgar and Laura D.G. Edgar sued Hahnemann University Hospital as conservators of the person and estate of their daughter, Shane Edgar, and in their own right, alleging that the hospital acted with gross negligence and willful misconduct when it failed to protect Shane Edgar from being raped forcibly by two male patients.[0]  During discovery, the Edgars requested the patient charts of the two male patients who allegedly raped Shane Edgar.  The hospital objected on the grounds that the documents were confidential and that it could not comply with the request without violating the Pennsylvania Mental Health Procedures Act, Pa. Stat. Ann. tit. 50, § 7101, et

_____

[0]At oral argument we asked counsel for the Edgars about the prudence of including Shane Edgar's name in unsealed court documents, in light of the nature of the allegations in the underlying case.  The attorney responded that the Edgars had chosen not to have their names redacted from court proceedings. For this reason, we include names in this opinion.

2

seq. (Purdon's Supp. 1995) ("MHPA"). The district court entered a series of orders requiring Hahnemann to provide the court with copies of all documents in its possession concerning the two male patients for an in camera review, with possible disclosure of the information to the parties, their counsel, and their experts, for use at trial. Hahnemann filed a petition for a writ of mandamus in this court, seeking immediate review of the district court's orders. We will grant Hahnemann's petition for mandamus.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 19, 1993, Shane Edgar was admitted to the Psychiatric Medical Care Unit of Hahnemann University Hospital in Philadelphia, Pennsylvania, for observation and evaluation. That same day, an involuntarily committed male psychiatric patient sexually harassed Shane; Hahnemann allegedly became aware of the incident. That night, the same male patient, along with another involuntarily committed male psychiatric patient, raped Shane in the bathroom of her room.[0]

Charles and Laura Edgar filed an action on behalf of their daughter and themselves against Hahnemann, alleging that the hospital negligently failed to protect their daughter from the sexual assault. Because notice of the danger may be germane to their cause of action under Pennsylvania law, the Edgars sought discovery from Hahnemann of any information that would

---

[0] We recite the facts as the Edgars allege them. It should be understood, therefore, that our recitation does not constitute findings.

demonstrate that it was on notice of the two male patients' propensity for sexual assault. Specifically, they sought the patient charts of the two men. The hospital objected on the grounds that the documents were confidential and that it could not comply with the request without violating the MHPA. After the Edgars moved for sanctions, the district court held a conference in an attempt to resolve the dispute. On April 19, 1995, the district court denied the Edgars' motion and directed that if the dispute was not resolved they could file a more specific set of requests for documents, limited by the MHPA.

After a final pretrial conference held on May 4, 1995, the Edgars filed a motion to compel the production of various documents, including the patient charts of the two male patients and/or entries on their charts made by a mental health worker, and the incident reports regarding the rape. Again, Hahnemann objected on the grounds that the confidentiality of the documents required protection under the MHPA. At the same time, the hospital pointed out that redacting the patients' names from the charts would not protect the documents' confidentiality because the Edgars had information that would allow them to deduce which report belonged to which patient.

On May 11, 1995, the district court, pursuant to section 111 of the MHPA, Pa. Stat. Ann. tit. 50, § 7111, denied the Edgars' request for the records. The court also denied the motion to compel the notes and chart entries of the mental health technician on duty the night of the attack. The court did,

4

however, order Hahnemann to produce any "incident reports" created as a result of the attack, and further ordered that:

> In the event that the only incident reports prepared by [the mental health technician] are contained in one or both of the treatment records of the male patients involved in the subject incident, the defendant shall . . . submit the treatment records of these two patients to the Court, in camera, for a determination as to whether § 7111 of the MHPA prohibits the discovery of said reports.

App. at 133. Hahnemann later informed the court by letter that it had disclosed all "incident reports" to the Edgars, and that an in camera inspection would not be necessary because the mental health technician involved had not prepared such a report.

The Edgars filed a motion for reconsideration of the May 11 order, emphasizing again that they were seeking information as to whether the hospital should be held liable for the rape and that they would be willing to accept documents edited so as to obscure the identity of the patients. In response, Hahnemann argued that the MHPA was so broad that even disclosure of the records to the district court for an in camera inspection was prohibited. Further, it reiterated its argument that "[the Edgars] are in possession of information regarding these two patients which would unfailingly allow them to identify which records pertain to which man, regardless of redaction." App. at 167. On July 10, 1995, the district court entered an order stating that its May 11, 1995 order denying the Edgars access to the patient charts remained in full force and effect and requiring the parties to appear for a conference in chambers on July 17, 1995, to discuss the following:

5

> [W]hether, in the interest of justice, methods might be employed to maintain the confidentiality of documents covered by §7111 of the MHPA in the event the Court should order documents concerning the treatment of the two male patients who allegedly attacked plaintiff Shane Edgar turned over to the Court for a determination as to whether said documents contain any matter which should have put the defendant on notice.

Edgar v. Hahnemann Univ. Hosp., No. 94-3515 (E.D. Pa. July 10, 1995). On the same day, the district court entered an order clarifying the meaning of "incident reports" and reiterating its requirement for the production of such reports, including the in camera inspection of the patients' records if such reports were included therein.

At the July 17, 1995 conference, the court decided that the hospital should deliver to it copies of all documents regarding the two male patients so that it could determine whether they contained information bearing on the liability of the hospital. The court thereafter directed the parties to submit proposed orders providing for the court to view the documents in camera. In response to the court's request, Hahnemann supplied it with a proposed order requiring disclosure of the medical records in camera but also containing certification language pursuant to 28 U.S.C. § 1292(b) and Fed. R. App. P. 5, designed to allow immediate appeal from an interlocutory order. The court then entered an order on July 18, 1995, which did not adopt the section 1292(b) certification language but read as follows:

> Within five days . . . Hahnemann University Hospital shall deliver to the court copies of all documents (including medical and

6

> psychiatric records as well as documents relating to involuntary commitment) in its possession concerning each of the two male patients who allegedly attacked Shane Edgar on March 19, 1993. The Court shall make every effort to maintain the confidentiality of the documents as prescribed by 50 P.S. §7111, 42 P.S. § 5944, 42 P.S. § 5929 and 28 Pa. Admin. Code § 103.22(b)(4) and shall review the documents in camera for the sole purpose of determining whether the documents contain information relevant to the issue of the standard of care the hospital owed Shane Edgar to insure her safety and well being while she was a patient. In the event the court determines that these documents do contain information relevant to the issue of the standard of care the hospital owed Shane Edgar to insure her safety and well being while she was a patient, the Court will direct counsel to make an effort to agree on a procedure to be employed during the trial of this case which will maintain the confidentiality of documents and will permit the use of the information. . . .

Edgar v. Hahnemann Univ. Hosp., No. 94-3515, slip op. at 2 (E.D. Pa. July 18, 1995). When Hahnemann failed to comply with this order, the Edgars moved the court to hold it in contempt.

On August 8, 1995, Hahnemann filed a petition for a writ of mandamus in this court under the All Writs Act, 28 U.S.C. § 1651(a), seeking to compel the district court to withdraw its July 10 and 18, 1995 orders. Two days later, Hahnemann asked the district court to stay all proceedings before it pending our disposition of the mandamus petition. While the request for a stay was pending, the district court granted the Edgars' application to hold Hahnemann in civil contempt for not providing the district court with the contested medical records as ordered. Thus, it entered an order on August 14, 1995, imposing a coercive

7

fine on Hahnemann of $1,000.00 per day for each day after August 16, 1995, that it did not comply with the July 18, 1995 order. The district court then denied Hahnemann's request for a stay on August 15, 1995, without prejudice to Hahnemann renewing the request in the event that we grant the petition for mandamus.  In denying the request for a stay, the court observed that it had not issued a formal ruling regarding certification under section 1292(b).[0]

On August 28, 1995, Hahnemann filed a "Supplemental Petition . . . for Writ of Mandamus" in this court requesting that we issue a stay of the coercive fine pending resolution of its petition on the merits.  On September 6, 1995, we entered an order staying the coercive fine effective August 28, 1995, when the supplemental petition was filed.

## II.  DISCUSSION

The district court has jurisdiction over the Edgars' diversity of citizenship action pursuant to 28 U.S.C. § 1332. Our jurisdiction is invoked pursuant to the All Writs Act, which provides that federal courts "may issue all writs necessary or

---

[0][A]lthough para. 9 of [Hahnemann's Petition for Stay of the Proceedings] asserts `in releasing its July 19, 1995 Order, this Court declined petitioning defendant's request that these issues be certified for immediate appeal pursuant to the procedure set forth at 28 U.S.C. § 1292(b)', the Court has not issued any ruling in this case concerning certification pursuant to 28 U.S.C. §1292(b).

Edgar v. Hahnemann Univ. Hosp., No. 94-3515 (E.D. Pa. Aug. 15, 1995).

8

appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). As the district court has diversity jurisdiction, this court potentially has jurisdiction over the case and therefore has jurisdiction under the All Writs Act to consider Hahnemann's petition. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 482 (3d Cir. 1995) (citing Westinghouse v. Republic of the Philippines, 951 F.2d 1414, 1422 (3d Cir. 1991)).

Hahnemann's petition contends that the district court's orders requiring it to submit for in camera review the patient charts of the two male patients who allegedly raped Shane Edgar would require it to violate the MHPA, as well as Pennsylvania's statutory psychotherapist-patient privilege, 42 Pa. Cons. Stat. Ann. § 5944 (Purdon's Supp. 1995), the Pennsylvania Patient's Bill of Rights, 28 Pa. Code. Ch. 103 (1983), and the constitutional rights of privacy of the male patients. Our inquiry requires us to decide whether the writ of mandamus is the appropriate means of relief for the hospital to pursue and, if it is, to examine whether the proposed in camera review of documents is permissible. The first issue, of course, implicates federal procedural law, and the parties correctly agree that the second issue should be decided under state law. See Fed. R. Evid. 501. Because we hold that mandamus is appropriate in this case and that the MHPA as a matter of law prevents the disclosure of the documents relating to the male patients' psychiatric care, we will grant the petition for mandamus, but will not reach

9

Hahnemann's remaining reasons for contending that we should issue the writ.

## A.   The Procedural Question

The writ of mandamus is a drastic remedy that a court should grant only in extraordinary circumstances in response to an act "amounting to a judicial `usurpation of power.'"  Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273 (1967) (quoting De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132 (1945)); Kerr v. United States Dist. Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123-24 (1976).  Given its drastic nature, a writ of mandamus should not be issued where relief may be obtained through an ordinary appeal.  Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 148 (1953) (citing Ex parte Fahey, 332 U.S. 258, 259-60, 67 S.Ct. 1558, 1559 (1947)); In re Sch. Asbestos Litig., 977 F.2d 764, 772 (3d Cir. 1992); Oracare DPO, Inc. v. Merin, 972 F.2d 519, 522-23 (3d Cir. 1992).  Thus, in addition to the jurisdictional prerequisite inherent in the language of section 1651(a), two additional prerequisites for issuance of a writ are: "(1) that petitioner have no other `adequate means to attain the [desired] relief,' and (2) that petitioner meet its burden of showing that its right to the writ is `clear and indisputable.'"  Haines v. Liggett Group Inc., 975 F.2d 81, 89 (3d Cir. 1992) (quoting Kerr, 426 U.S. at 403, 96 S.Ct. at 2124, and citing DeMasi v. Weiss, 669 F.2d 114, 117 (3d Cir. 1982)); Communication Workers v. American Tel. & Tel. Co., 932 F.2d 199, 208 (3d Cir. 1991).  Even

10

when these prerequisites are met, issuance of the writ is largely discretionary, bearing in mind "`the unfortunate consequence of making the . . . judge a litigant,'" Kerr, 426 U.S. at 402, 96 S.Ct. at 2124, and the highly disfavored effect of piecemeal appellate review. Haines, 975 F.2d at 89; DeMasi v. Weiss, 669 F.2d at 117.

Discovery orders are not "final" for purposes of 28 U.S.C. § 1291 and, therefore, ordinarily are not appealable until after there is a final judgment. Haines, 975 F.2d at 83 (citing Borden Co. v. Sylk, 410 F.2d 843, 845 (3d Cir. 1969)). Furthermore, we do not permit parties to litigation to circumvent the final judgment rule simply by resisting discovery orders and then appealing from an eventual finding of civil contempt. See, generally, DeMasi, 669 F.2d at 122–23. To be sure, appeal after final judgment constitutes "other means" of relief. Where a privilege is asserted, however, such relief usually is not "adequate." As we held in Bogosian v. Gulf Oil Corp., 738 F.2d 587 (3d Cir. 1984), "[w]hen a district court orders production of information over a litigant's claim of a privilege not to disclose, appeal after a final decision is an inadequate remedy . . . for compliance with the production orders complained of destroys the right sought to be protected." Id. at 591 (citations omitted). Several of our cases since Bogosian have reaffirmed this basic proposition. See, generally, Glenmede Trust Co., 56 F.3d at 483; Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 861 (3d Cir. 1984); Haines, 975 F.2d at 89.

11

Respondents and nominal respondent argue, however, that issuing a writ of mandamus would be inappropriate at this point because Hahnemann never formally petitioned the district court for certification under 28 U.S.C. § 1292(b).[0]  Therefore, respondents contend there remains a viable and "adequate" alternative to the issuance of an extraordinary writ.  We disagree.  Hahnemann included certification language in the proposed order allowing <u>in camera</u> inspection that it submitted to the district court.  Nevertheless, the district court did not include that language in the order it entered.  While it is true that, "[w]here interlocutory appeal seems a practical but untried avenue, we will ordinarily deny a petition for mandamus," <u>In re Sch. Asbestos Litig.</u>, 977 F.2d at 774, we also have stated that "neither Federal Rule of Appellate Procedure 21 nor any decision, Rule, or Internal Operating Procedure of this court has codified" a requirement to seek section 1292(b) certification before filing a petition for mandamus.  <u>Id.</u> at 773.  Furthermore, although Hahnemann did not <u>formally</u> move the district court for a section 1292(b) certification, it is clear that it did so at least <u>informally</u>.

We recognize that, in a particular case, it might be appropriate to exercise our discretion to deny mandamus because a

---

[0]In their answer to the petition, the Edgars raised this objection, but they did not repeat it in their subsequently filed brief and, at oral argument, appeared to abandon the objection. We nevertheless address the point because (1) it is appropriate to do so in light of the standards governing applications for mandamus and (2) the nominal respondent has filed an answer raising the point.

formal application for certification has not been made under

section 1292(b). Yet where, as here, at least an informal

application has been made and not granted, we believe it can be

appropriate to grant mandamus, especially since we never have

established an "inflexible pleading requirement" regarding

section 1292(b) certification. Id. at 774; see Alexander v.

Primerica Holdings, Inc., 10 F.3d 155, 163 n.8 (3d Cir. 1993).[0]

Hahnemann's desired relief of maintaining the confidentiality and

privilege of the medical records of the two male patients could

be lost forever unless we issue a writ of mandamus. See Haines,

975 F.2d at 89 (writ of mandamus is only means of relief from

order requiring production of documents allegedly subject to

attorney-client privilege). We therefore hold that because

Hahnemann has no other adequate means to attain its desired

relief, the first requirement for mandamus has been satisfied.

In addressing the merits of this case in an effort to

determine if Hahnemann's right to a writ of mandamus is "clear

and indisputable," Haines, 975 F.2d at 89, we first must specify

exactly which order(s) of the district court are subject to

---

[0]We also point out that section 1292(b) permits a district court
to certify an order so that a court of appeals may grant leave to
appeal only if the district court concludes that the "order
involves a controlling question of law . . . and that an
immediate appeal from the order may materially advance the
ultimate termination of the litigation . . . ." It is
conceivable that mandamus might be appropriate in a case not
satisfying the section 1292(b) certification standard. See
Westinghouse v. Republic of the Philippines, 951 F.2d at 1422
n.6; Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1118 n.14
(3d Cir. 1986). Thus, we have not imposed an inflexible
requirement that certification be sought and, if granted, leave
to appeal be sought before a writ of mandamus may issue.

13

mandamus.  We have decided that only the July 10 and 18, 1995 orders requiring Hahnemann to produce the treatment records of the two male patients are subject to mandamus.  Although Hahnemann has indicated in its petitions and briefs that it also challenges the August 14 and 15, 1995 orders respectively holding it in contempt and denying its motion for a stay, we find that those orders are not appropriate for review by mandamus.  To the extent that Hahnemann seeks relief from the August 15 order denying Hahnemann's motion for a stay, the district court's order is not reviewable by mandamus because the court indicated that it would permit a renewed motion to stay (or vacate) in the event that this court grants Hahnemann's writ on the merits.  As to the August 14 contempt order, Hahnemann has a possible alternative remedy that renders our issuance of a writ inappropriate: Hahnemann can appeal the contempt order after final judgment if it has paid the fines incurred between August 16 and August 28, 1995 (the latter being the date of our stay).  Thus, we review on the merits only the district court's orders of July 10 and July 18 requiring the production for in camera review of the patients' treatment charts.

### B.  The Scope of the MHPA Privilege

As we stated above, Hahnemann claims that the MHPA forbids it from producing the records of the patients who allegedly raped Shane Edgar to the district court.  The Act "establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for

14

all voluntary inpatient treatment of mentally ill persons."  Pa.

Stat. Ann. tit. 50, § 7103.  Section 111 of the MHPA provides as

follows:

> All documents concerning persons in
> treatment shall be kept confidential and,
> without the person's written consent, may not
> be released or their contents disclosed to
> anyone except:
>
>     (1) those engaged in providing treatment
> for the person;
>     (2) the county administrator, pursuant
> to section 110;
>     (3) a court in the course of legal
> proceedings authorized by this act; and
>     (4) pursuant to Federal rules, statutes
> and regulations governing disclosure of
> patient information where treatment is
> undertaken in a Federal agency.
>
>     In no event, however, shall privileged
> communications, whether written or oral, be
> disclosed to anyone without such written
> consent.  This shall not restrict the
> collection and analysis of clinical or
> statistical data by the department, the
> county administrator or the facility so long
> as the use and dissemination of such data
> does not identify individual patients. . . .

Pa. Stat. Ann. tit. 50, § 7111.  The purpose of the MHPA is to

further the policy of the Commonwealth of Pennsylvania "to seek

to assure the availability of adequate treatment to persons who

are mentally ill."  Id. § 7102.  In fact, the Pennsylvania

Supreme Court has given the patient's right to confidentiality of

psychiatric records constitutional status.  See In re June 1979

Allegheny County Investigating Grand Jury, 415 A.2d 73, 77-78

(Pa. 1980) (but finding that public policy reasons may allow

constitutionally protected records to be subpoenaed where

appropriate protections against further disclosure are in place);

15

*In re B.*, 394 A.2d 419, 425 (Pa. 1978). The Act therefore is strictly construed. *In re Roy*, 620 A.2d 1172, 1173 (Pa. Super. Ct. 1993), *appeal denied*, 639 A.2d 30 (Pa. 1994); *Commonwealth v. Moyer*, 595 A.2d 1177, 1179 (Pa. Super. Ct. 1991), *appeal denied*, 604 A.2d 248 (Pa. 1992).

Section 111 of the MHPA does not create a conventional privilege protecting communications only if they satisfy certain elements. *See In re June 1979 Allegheny County Investigating Grand Jury*, 415 A.2d at 76-77. On the contrary, section 111 is much broader in scope, covering any document that "concern[s] persons in treatment." Pa. Stat. Ann. tit. 50, § 7111. The statute requires that such documents "shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except" in four listed situations, all having to do with psychiatric care. *Id.* That language indicates that disclosure of treatment records is forbidden unless one of the statutory exceptions applies.

Indeed, it appears that every Pennsylvania court in determining the applicability of section 7111 first has examined whether the situation before it constituted one of the listed exceptions. *See, e.g.*, *Johnsonbaugh v. Dep't of Public Welfare*, 665 A.2d 20, 26 (Pa. Commw. Ct. 1995) ("Petitioner has failed to establish that any of the statutory exceptions apply[.]"). The only exception that could be applied in the case before us is the one contained in subparagraph (3), allowing disclosure of confidential documents to "a court in the course of legal proceedings authorized by this act." Pa. Stat. Ann. tit. 50,

16

§7111. However, this exception has been held to include only involuntary and voluntary mental health commitment proceedings, as those are the only legal proceedings authorized by the Act. In re Roy, 620 A.2d at 1173-74 ("[A] patient's inpatient mental health records may be used by a court only when the legal proceedings being conducted are within the framework of the MHPA, that is, involuntary and voluntary mental health commitment proceedings.") (quoting Commonwealth v. Moyer, 595 A.2d at 1179).

When none of the four exceptions to section 7111 of the MHPA applies, the Pennsylvania state courts consistently have denied requests for production of documents that the statutory privilege covers. For example, in Commonwealth v. Moyer, 595 A.2d 1177, a case stemming from repeated sexual assaults of a boy, the Superior Court of Pennsylvania overturned the defendant's conviction on the ground that the trial court erred in admitting his mental health treatment records into evidence because they were privileged under the MHPA. In Leonard v. Latrobe Area Hosp., 549 A.2d 997 (Pa. Super. Ct. 1988), plaintiffs' mother was killed by her husband, and they brought a negligence action against the hospital that treated him for a psychiatric disorder. The Superior Court reaffirmed that under the MHPA the hospital could not disclose the patient's records.

In Ferrara v. Horsham Clinic, 1994 WL 249741 (E.D. Pa. June 3, 1994), plaintiff brought a wrongful death and survival action against a clinic in which her daughter had committed suicide. The district court denied plaintiff's motion to compel production of the treatment notes concerning a patient who had an

17

altercation with her daughter.  Id. at *2.  The court held that these documents were privileged under the MHPA and could not be disclosed.  Id.  In Kakas v. Commonwealth, 442 A.2d 1243 (Pa. Commw. Ct. 1982), a hospital employee fired for allegedly punching a patient subpoenaed the patient's records for his hearing before the State Civil Service Commission to challenge the dismissal.  The Commonwealth Court affirmed the Commission's quashing of the subpoena duces tecum on the ground that the records were privileged under the MHPA.

In fact, with the exception of cases in which the statutory privilege has been waived by the patient, e.g., Sprague v. Walter, 656 A.2d 890, 910-11 (Pa. Super. Ct. 1995), it seems that a Pennsylvania court has found in only one case that the protection conferred by section 7111 of the MHPA should give way. In Fewell v. Besner, 664 A.2d 577 (Pa. Super. Ct. 1995), the plaintiff was committed involuntarily pursuant to the MHPA after becoming severely depressed over her four-month-old son's death. While committed she confessed to the defendant, her therapist, that she had suffocated her son.  Id. at 578.  Believing (erroneously) that state law obligated him to report child abuse, the therapist informed the coroner of plaintiff's confession and testified at her criminal trial, where she was found guilty.[0]

_____

[0] On appeal from her conviction, the Superior Court found that the therapist's compelled testimony at trial violated the state's psychotherapist-patient privilege, 42 Pa. Cons. Stat. Ann. §5944, but determined that the error was harmless.  Commonwealth v. Fewell, 654 A.2d 1109, 1115 (Pa. Super. Ct. 1995).  The court was not presented with the issue involved in the civil suit (that the immunity provisions trumped the statutory confidentiality requirements).

18

Commonwealth v. Fewell, 654 A.2d 1109, 1115 (Pa. Super. Ct. 1995). Plaintiff then sued the therapist for violating section 111 of the MHPA but the trial court granted the therapist's motion to dismiss based on provisions in the mandatory reporting law granting immunity from suit for those who acted in good faith in making a report. On appeal, plaintiff claimed that the immunity provision was in conflict with the confidentiality requirements of section 111 of the MHPA. The Superior Court disagreed. It held that the privilege must yield to the immunity provisions, noting the strong policy interest evinced by the statutes requiring the reporting of child abuse. Thus, the court essentially held that a therapist who learns of child abuse during therapy and is compelled to testify at a criminal trial will not be permitted to invoke the MHPA confidentiality privilege, given the competing statutory interests in the reporting of child abuse, and the statutory immunity from suit granted to those making such reports.

The cases we have cited make it clear that the MHPA is strictly construed by the Pennsylvania courts. In the absence of a waiver of the privilege, in only one instance has a court held that a confidential document should be produced, and that case involved the competing statutory interests of child abuse reporting and good faith immunity from suit. No such competing statutory interests apply here, and in any event it is not the place of this court to create judicial exceptions to a Pennsylvania statute that has been strictly construed by the state's courts. See Leo v. Kerr-McGee Chem. Corp., 37 F.3d 96,

19

101 (3d Cir. 1994) (federal court in diversity case ought not to stretch state common law).

In spite of the state courts' strict interpretation of the MHPA, however, the Edgars argue that Pennsylvania could not possibly have intended to require confidentiality under the circumstances presented in this case. Additionally, they complain that the policy the statute seeks to promote -- encouraging treatment by ensuring confidentiality -- is not advanced by strict adherence to the statutory language of the privilege in this case. Again, while the Edgars may raise plausible policy arguments against the legislative wording of the statute, we are obliged to follow the statute as written and interpreted by the Pennsylvania courts. The MHPA presents an absolute confidentiality privilege against the disclosure of documents that "concern[] persons in treatment." The Pennsylvania courts have interpreted the wording of the statute strictly. While in a particular case, a litigant may challenge documents for which protection is claimed as not meeting the "concerning persons in treatment" standard, that situation is clearly not present here, since the documents we are considering are the treatment records of the two men accused of raping Shane Edgar.[0]

---

[0] We doubt that a hospital can make an unreviewable ex parte determination that a document concerns a person in treatment and thereby refuse to disclose documents for an in camera review, intended in the first instance to determine if the document is confidential according to section 111. If a hospital could sustain that position, it would be able to withhold documents that might not reasonably be covered by the section. We, however, are not concerned with a situation of that nature here.

20

Further, unlike conventional privileges that apply only to certain communications, section 111 of the MHPA creates a much broader protection, forbidding the disclosure of any document "concerning persons in treatment" regardless of the contents of that document. Thus, it is possible that documents receiving protection under the MHPA may not contain material that would be privileged under any other statutory or common-law privilege. Nevertheless, as long as the documents concern persons in inpatient psychiatric treatment (voluntary or involuntary), section 111 of the MHPA absolutely forbids their disclosure except in the enumerated circumstances.[0] The in camera inspection of such documents by the district court in this case does not fall within one of those exceptions. We have no further inquiry to make.

### III. CONCLUSION

We therefore hold that Hahnemann's right to a writ of mandamus is clear and indisputable, and that the district court exceeded its authority in compelling the hospital to produce the charts of the two male patients. Consequently, we will grant the writ of mandamus and direct the district court to vacate the July 10 and 18, 1995 orders compelling production of the patients' records for in camera inspection and possible disclosure.

---

[0] As we have indicated, the MHPA applies to "all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and [to] all voluntary inpatient treatment of mentally ill persons." Pa. Stat. Ann. tit. 50, § 7103. We are not concerned here with tortious conduct of outpatients.

21

However, we will deny Hahnemann's supplemental petition for a writ of mandamus on the issues of the petition for a stay of the district court proceedings and the district court's contempt order. The parties shall bear their own costs on these mandamus proceedings.