J-A17025-16

2016 PA Super 194

| DWAYNE GRAY | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellee | | |
| v. | | |
| ALLEN HUNTZINGER AND CENTRAL PARKING SYSTEMS, INC. | | |
| Appellants | | No. 1882 EDA 2015 |

Appeal from the Judgment Entered May 20, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): April Term, 2013 No. 03584

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

OPINION BY LAZARUS, J.:                                  **FILED AUGUST 30, 2016**

Allen Huntzinger and Central Parking Systems, Inc. ("CPS")

(collectively, "Appellants") appeal from the judgment entered in favor of

Dwayne Gray by the Honorable Lisette Shirdan-Harris of the Court of

Common Pleas of Philadelphia County. Upon review, we reverse.

The trial court summarized the facts as follows:

[Gray] filed a Complaint asserting claims of assault, battery, and intentional infliction of emotional distress ("IIED") against [Appellants], pursuing both compensatory and punitive damages. At the jury trial before [the trial court], [Gray] presented evidence regarding an incident on April 19, 2011, at the CPS offices. [Gray] worked for CPS at that time and was told to report to the office of [Huntzinger], the Operations Manager for CPS at the Philadelphia Sports Complex. [Gray] testified that while in [Huntzinger's] office, [Huntzinger] first told

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Gray] that he was suspended [pending an] investigation. After continuously questioning [Huntzinger] for reasons why he was being suspended, [Huntzinger] fired him and grabbed [Gray's] right arm forcefully to pull [Gray] towards [Huntzinger].

[Gray] also testified that [Huntzinger] followed him into the hallway outside [Huntzinger's] office and bumped into him, although not causing any injury. Afterwards, [Gray] called 911, stating he was "very sick to my stomach and I called 911 because I wasn't feeling well. [The situation] made me sick and I got concerned." An ambulance arrived and took [Gray] to the hospital due to the situation elevating his Crohn's [d]isease. "The Crohn's is extremely painful. The elevation is due to many different things and one of them is being stress [sic] will cause swelling of the intestines and it's very, very painful." [Gray] also stated that the Crohn's flare-up did not occur until after [Huntzinger] grabbed him.

[Gray] testified that the incident made him feel humiliated and embarrassed in front of his co-workers. [Gray] also stated that even at the time of testimony, he felt threatened by the fact that an employer could treat him in this manner.

On cross-examination, [Gray] stated that, prior to the incident, he had made numerous emergency room visits caused by his Crohn's disease.

[Appellants], during their case-in-chief, presented evidence offered by [Huntzinger]. He testified that on the day of the incident in question, he met with [Gray] to discuss a customer service complaint made against [Gray]. [Huntzinger] further testified that he never grabbed or touched [Gray], or threatened to grab or touch [Gray] during the meeting or at any time. [Huntzinger] also testified that after [Gray] left his office, he followed [Gray] into the hallway, walking two steps behind him when [Gray] stopped, took two steps back, bumped into [Huntzinger] (a "very minor" bump) and yelled "assault."

[Appellants] also presented the testimony of Annemarie Williams, the Facility Manager for CPS's Wells Fargo Center location at the time of the incident. [Williams] was present during the entire meeting between [Gray] and [Huntzinger] and testified that at no time did [Huntzinger] grab, touch, or threaten to grab or touch [Gray]. [Williams] described [Gray's] demeanor during the meeting as loud, belligerent, and angry[,] whereas she described [Huntzinger] as calm and cool.

[Williams] also agreed with [Huntzinger's] testimony that after the meeting concluded, [Huntzinger] followed [Gray] into the hallway and lobby area, at which time [Gray] turned and "grazed" [Huntzinger].

Trial Court Opinion, 2/4/16, at 3-5 (citations to record omitted).

At the close of Gray's case-in-chief, Appellants moved for a compulsory non-suit, which was denied. At the close of all evidence, Appellants moved for a directed verdict and to dismiss Gray's claim for punitive damages. Both motions were denied.

On November 20, 2014, the jury returned a verdict for Appellants on the claims of assault and battery, but for Gray on the claim of IIED. The jury awarded Gray a total of $67,500, including $15,000 in compensatory damages, $2,500 in punitive damages against Huntzinger, and $50,000 in punitive damages against CPS.

On November 25, 2014, Appellants filed a motion for post-trial relief, comprised of a motion for judgment notwithstanding the verdict (JNOV), a motion for a new trial, and motion for remittitur. On May 20, 2015, the trial court denied the motion for post-trial relief.

On June 10, 2015, Appellants filed a timely notice of appeal and, on June 30, 2015, filed their court-ordered concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, Huntzinger and CPS raise six issues for our review:

1. Was [Gray] required to submit expert medical testimony to recover on this claim for intentional infliction of emotional distress?

2.      Was the evidence at trial sufficient to support the jury's conclusion that [Huntzinger] was liable for intentional infliction of emotional distress?

3.      Was the evidence at trial sufficient to support the jury's award of punitive damages?

4.      Are [Appellants] entitled to [JNOV]?

5.      Are [Appellants] entitled to a new trial?

6.      Are [Appellants] entitled to remittitur of punitive damages?

Brief for Appellants, at 9-10.

Appellants first claim that the trial court erred in failing to grant JNOV because medical testimony is required to recover on a claim for IIED. Relying on *Kazatkzy v. King David Memorial Park, Inc.*, 527 A.2d 988 (Pa. 1981), Appellants assert that because Gray did not present any expert medical testimony at trial, the jury's verdict cannot stand. We agree.

"The gravamen of the tort of [IIED] is outrageous conduct on the part of the tortfeasor." *Id.* at 991. Specifically, a plaintiff must prove that the defendant "by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress." *Id.*, quoting Restatement (Second) of Torts, § 46; *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997).

The tort of intentional infliction of emotional distress by outrageous conduct differs from traditional intentional torts in an important respect: it provides no clear definition of the prohibited conduct.

Battery, assault, and false imprisonment describe specific forms of behavior; while we can quibble about whether a kick in the playground should be attended with the same legal consequences as a kick in the classroom, everyone can agree that you cannot have a battery without physical contact (or an assault without at least the appearance of attempted physical contact, or a false imprisonment without restraint of the freedom

- 4 -

of movement). The relative ease with which injury may be established is counter balanced by the specificity of the prohibited behavior.

*Kazatsky*, 527 A.2d at 994, quoting Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct*,¸82 Colum. L. Rev. 42, 52-53 (1982).

In contrast to the intentional torts enumerated above, the definition of "outrageousness" is subjective and nebulous;[1] thus, the availability of

---

[1] The Restatement (Second) of Torts defines "extreme and outrageous conduct" as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where [someone's] feelings are hurt.

*(Footnote Continued Next Page)*

recovery for IIED is "highly circumscribed," *id.* at 991, and objective proof of an injury is required. To this end, the Court in **Kazatsky** concluded as follows:

> It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's "outrageousness" without expert medical confirmation that the plaintiff actually suffered the claimed distress. Moreover, the requirement of some objective proof of severe emotional distress will not present an unsurmountable obstacle to recovery. Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries. **We therefore conclude that if section 46 of the Restatement is to be accepted in this Commonwealth,[2] at the very least, existence of the alleged emotional distress must be supported by competent medical evidence**.

*Id.* at 995 (emphasis added).

Despite the clear mandate of **Kazatsky**, Gray asserts that the fact he was physically impacted by Huntzinger relieves him of the need to present expert testimony. However, for various reasons, the authorities cited by Gray do not support his claim. Several of the cases upon which Gray relies do not involve IIED but rather negligent infliction of emotional distress, for which medical evidence is not required. *See Niederman v. Brodsky*, 261

_(Footnote Continued)_ ───────────

Restatement (Second) of Torts § 46 comment d. (1965).

[2] To date, the Supreme Court has yet to explicitly adopt section 46. Because the plaintiff in **Kazatsky** failed to present medical evidence, the Court did not find it necessary to reach the question of whether to allow causes of action for IIED in this Commonwealth.

A.2d 84 (Pa. 1970) (abandoning requirement of a physical impact as a precondition to recovery for mental anguish damages in negligence cases); **Bloom v. Dubois Regional Medical Center**, 597 A.2d 671 (Pa. Super. 1991) (addressing *negligent* infliction of emotional distress); **Stoddard v. Davidson**, 513 A.2d 419 (Pa. Super. 1986) (same).

Gray also cites the Subcommittee Note to Pennsylvania Standard Civil Jury Instruction 17.40, which states as follows:

> [t]he Pennsylvania Superior Court has also stated that expert medical testimony is not necessary in order to establish a claim for intentional infliction of emotional distress in a non-negligence case where the causal connection between the conduct and the injury is "direct, obvious, and foreseeable." **Montgomery v. Bazaz-Sehgal**, 742 A.2d 1125, 1133 (Pa. Super. 1999)[.]

Pa.S.S.J.I. (Civ.) § 17.40, Subcommittee Note. However, contrary to the characterization provided in the Note, **Montgomery** does not, in fact, involve a claim of IIED; rather, it is a battery case in which mental anguish damages were requested. As noted above, the tort of IIED differs from traditional intentional torts such as battery. **See Kazatsky**, 527 A.2d at 994. Accordingly, the holding of **Montgomery** is inapposite here.

Finally, Gray quotes extensively from **Romani-Ruby v. Romani**, 114 WDA 2015 (Pa. Super. filed 1/6/16) (unreported memorandum decision). However, **Romani-Ruby** is: (1) non-precedential; (2) factually

distinguishable; and (3) to the extent it appears to support Gray's argument in dicta, incorrect.[3]

_____

[3] In **Romani-Ruby**, the appellant was sued for, *inter alia*, negligent infliction of emotional distress ("NIED") and IIED, and a jury awarded damages totaling nearly $2.5 million. On appeal, the appellant claimed that the plaintiffs' claims for IIED were unsupported by any medical testimony and, as such, any award for such claims must fail pursuant to **Kazatsky**. In disposing of this claim, the Court noted that the appellant did not request a verdict form that differentiated between the NIED and IIED claims, nor did he object to the form that was submitted to the jury. Thus, to the extent that it was impossible to differentiate between the awards for NIED and IIED, the claim was waived. However, the Court, in what can only be construed as *dicta* due to the appellant's waiver of the issue, went on to interpret **Kazatsky** to stand for the proposition that, where outrageous conduct is accompanied by any sort of physical impact, medical testimony is not required to establish IIED. A close reading of **Kazatsky** reveals no such exception.

We note that the **Romani-Ruby** Court is not the only panel of this Court to misread **Kazatsky**. Indeed, there is a line of cases reading **Kazatsky** to require the existence of physical injury or harm in order to recover on a claim of IIED. *See Fewell v. Besner*, 664 A.2d 577, 582 (Pa. Super. 1995) (asserting that, under **Kazatsky**, "[a] plaintiff must also show physical injury or harm in order to sustain a cause of action for intentional infliction of emotional distress"); *Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. Super. 1993) (discussing the requirements for a claim of IIED under section 46 of the Restatement (Second) of Torts and stating "[t]he Supreme Court [in **Kazatsky**] has further added the requirement of physical injury or harm in the event that § 46 is to be adopted"); *Kelly v. Resource Housing of America, Inc.*, 615 A.2d 423, 426 (Pa. Super. 1992) (setting forth requirements for IIED claim and noting that, "[a]s a threshold requirement, in any event, there must be physical injury or harm"); *Abadie v. Riddle Memorial Hospital*, 589 A.2d 1143, 1146 (Pa. Super. 1991) ("[I]n [**Kazatsky**], our [S]upreme [C]ourt imposed, as a threshold requirement to determining whether specific conduct of which a party complains reaches the level of outrageousness under [s]ection 46 of the Restatement (Second) Torts, an allegation of physical injury or harm.").

*(Footnote Continued Next Page)*

In sum, our Supreme Court clearly articulated in **Kazatsky** that, to the extent the tort of IIED is recognized in this Commonwealth, recovery is limited to those cases in which competent medical evidence of emotional distress is presented by the claimant.[4]  **See also Cassell v. Lancaster**

_(Footnote Continued)_ ───────────

The portion of **Kazatsky** cited by each of the above panels in support of the purported "physical injury or harm" requirement reads as follows:

> It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's "outrageousness" without expert medical confirmation that the plaintiff actually suffered the claimed distress.  Moreover, the requirement of some objective proof of severe emotional distress will not present an unsurmountable obstacle to recovery.  Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries.  We therefore conclude that if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence.  In this case no such evidence was presented and the record further reflects that neither Mr. nor Mrs. Kazatsky sought medical assistance.

**Kazatsky**, 527 A.2d at 995.  We can only assume that the Court's references to "injuries" were interpreted by the prior panels to refer to physical, and not emotional or psychological, injuries and that the Court's use of the word "medical" was construed to be limited to physical, and not emotional or mental, health.  In context, however, it is apparent that the Court was using the term "medical" to include such practitioners as psychiatrists who are, in fact, medical doctors.  Likewise, the term "injuries" was meant to encompass mental and emotional distress.

[4] Our interpretation of **Kazatsky** is supported by the decision of the Supreme Court in **Hackney v. Woodring**, 652 A.2d 291 (Pa. 1994).  There, plaintiff was employed by defendant as a teacher's aide at a day care center. During the course of her employment, the defendant, on numerous

_(Footnote Continued Next Page)_

*Mennonite Conference*, 834 A.2d 1185, 1189 n.3 (Pa. Super. 2003) ("Expert medical testimony is necessary to establish that a plaintiff actually suffered the claimed emotional distress."); *Wecht v. PG Pub. Co.*, 725 A.2d 788, 791 (Pa. Super. 1999) ("The Court [in *Kazatsky*] held that plaintiffs could not succeed absent medical confirmation that they actually suffered the claimed emotional distress."); *Shiner v. Moriarty*, 706 A.2d 1228, 1239 (Pa. Super. 1998) ("Expert medical testimony is required to establish a claim for intentional infliction of emotional distress."); *Britt v. Chestnut Hill College*, 632 A.2d 557, 561 (Pa. Super. 1993) ("In addition to requiring that a plaintiff establish that the conduct complained of was outrageous, the

_(Footnote Continued)_ _____

occasions, forcibly held her down on his lap and touched, fondled, and spanked her. Plaintiff eventually was discharged and brought an action for IIED, claiming she suffered from humiliation, loss of self-esteem, nightmares, and insomnia.

Following a jury verdict in favor of the plaintiff, the trial court granted defendant's motion for JNOV on the ground that plaintiff had failed to introduce expert medical testimony. On appeal this Court held that "[w]e conclude that expert testimony was not required under the facts and circumstances of the present case," and reversed the grant of JNOV. *Hackney v. Woodring*, 622 A.2d 286 (Pa. Super. 1993). The Court reasoned that the question of whether severe emotional distress existed could be decided by a jury unaided by expert testimony.

On allowance of appeal, **despite the evidence of physical impact by the defendant upon the plaintiff**, our Supreme Court, citing *Kazatsky* in a *per curiam* order, reversed this Court's holding, thus reinstating the trial court's grant of JNOV. Thus, it is apparent that, regardless of the presence of physical impact, *Kazatsky* unequivocally requires expert medical testimony as a precondition to recovery for IIED.

Pennsylvania Supreme Court has required that the plaintiff present competent medical evidence to support the claim.").

Because we have determined that Gray was not entitled to recover for IIED based on the lack of medical evidence presented at trial, we need not address the remainder of Appellants' claims.

Judgment reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2016