J-A26020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CAROL FIUMARA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SUPPORTIVE HOUSING MANAGEMENT SERVICES, INC., | |
| Appellant | No. 2032 WDA 2015 |

Appeal from the Order Entered December 4, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-12-19281

BEFORE:  BENDER, P.J.E., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED DECEMBER 12, 2016**

Appellant, Supportive Housing Management Services, Inc. (referred to herein as "SHMS"), appeals from the trial court's December 4, 2015 order denying its motion for post-trial relief, granting Appellee's, Carol Fiumara, motion for post-trial relief, and awarding a new trial limited to the issue of damages for SHMS's breach of a lease agreement.  For the reasons stated herein, we affirm in part and reverse in part.

The trial court set forth the facts and procedural history of this case as follows:

> I presided over this Jury Trial from March 24, 2015 to March 27, 2015.  It involved the claims of Breach of Contract and unlawful eviction by [Appellee] Carol Fiumara (Fiumara) against [Appellant], her landlord, Supportive Housing Management Services, Inc. (SHMS).
>
> After [the] close of testimony[,] I directed a verdict on the Breach of Contract claim but left the issue of damages for that

breach to the jury. It found "zero" damages. I also submitted to the jury the question of whether SHMS had acted in an "outrageous fashion" against Fiumara. It found that it had.

Based on that finding[,] I permitted Fiumara to then submit evidence in support of her punitive damage[s] claim. The jury returned a verdict of $13,000 in punitive damages plus attorney[']s fees.

SHMS filed a timely Motion for Post-Trial Relief relative to the punitive damage[s] and attorney's fee[s] verdict[,] and [sought] Judgment Non Obstante Veridictu (N.O.V.). Fiumara thereafter filed a Motion for Post-Trial Relief contesting the award of "zero" damages….

Both [a]ttorneys filed excellent and able [b]riefs in support of their contending positions.

The [f]acts are relatively simple. SHMS is a federally subsidized housing facility for elderly low income residents. Fiumara was one such resident.

SHMS provided reserved parking for its residents who had automobiles and Fiumara did have an automobile. It developed that an employee of SHMS, one Chip Kemmerer, while answering a call at the Dormont facility[,] parked his vehicle in Fiumara's parking spot[,] which it continued to occupy when Fiumara returned to the site. She blocked his vehicle in and called the local police. The employee appeared shortly thereafter[,] as did Police Officer George Dailey. After a mildly heated exchange, Officer Dailey declined to issue a citation to Mr. Kemmerer, had Fiumara move her car and let Mr. Kemmerer go on to his next assignment.

The next day[,] the [m]anager of SHMS[,] Gloria Knowlson, summoned Fiumara to her office and told her she was being evicted because of her behavior in the parking lot and blocking [in of] Mr. Kemmerer…. She followed this verbal eviction with a letter that was received as Plaintiff's Exhibit 9.

Fiumara, believing that she [was] being evicted and that protest would be futile, complied with Ms. Knowlson's directive.

Fiumara was unable to immediately find subsidized housing and was forced to take an apartment with her son. As a result[,] she was forced to expend more money than [she had]

previously while a tenant of SHMS. She testified that all of her marital pension money plus money borrowed from her children was necessary to reside at this new apartment. Later, in 2013, she was able to acquire subsidized housing comparable to that of SHMS. … [H]er out-of-pocket costs were tabulated in Plaintiff's Exhibits 12 and 13.

In defense, SHMS acknowledged that it was subject to government regulation establishing the basis and protocol for eviction. It argued[,] however[,] that because Fiumara left willingly after being told to leave and did not require a judicial landlord-tenant proceeding[,] that she had not been "evicted." I was not persuaded by this argument.

The applicable regulations here establish that eviction can occur only after a tenant commits a second offense. As [U.S. Department of Housing and Urban Development]-subsidized housing, federal law restricts the … landlord's ability to terminate leases and remove tenants. Specifically, except for non-payment of rent, dangerous conduct, or criminal activity, the landlord is precluded from terminating a tenant's lease for "cause" unless: "… the landlord has given the tenant prior notice that said conduct shall henceforth constitute a basis for termination of occupancy." See 24 C.F.R. § 247.3.

Trial Court Opinion (TCO), 12/4/2015, at 1-3.

Based on the trial court's findings of fact and legal conclusions, it issued an order denying SHMS's motion for post-trial relief, granting Ms. Fiumara's motion for post-trial relief, and awarding a new trial limited to the issue of damages for breach of contract. SHMS timely appealed, and raises two issues for our review:

1. Whether the trial court erred by allowing an award of punitive damages, plus attorney's fees, for a breach of contract, when the sole tort claim pled by Ms. Fiumara was earlier dismissed, and there was no contractual or statutory basis for an award of attorney's fees.

2. Whether the trial court erred in awarding Ms. Fiumara a new trial limited to the issue of damages for SHMS's breach of Ms. Fiumara's lease, when the jury's finding of

> $0 in compensatory damages was fully supported by the record, including by Ms. Fiumara's failure to establish any specific amount that she paid as a result of SHMS's conduct, and by Ms. Fiumara's failure to mitigate her damages, and in no way the result of some improper influence.

SHMS's Brief at 4.

First, we examine SHMS's claim that the punitive damages award was made in error and should be vacated. **See** SHMS's Brief at 18, 21. We apply the following standard of review when assessing a trial court's denial of a request for judgment notwithstanding the verdict:

> [T]he standard of review for an order granting or denying judgment notwithstanding the verdict is whether there was sufficient competent evidence to sustain the verdict. We must view the evidence in the light most favorable to the verdict winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. Furthermore, judgment nov should be entered only in a clear case, where the evidence is such that no reasonable minds could disagree that the moving party is entitled to relief. Review of the denial of judgment nov has two parts, one factual and one legal:
>
> > Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded evidence at trial, we will not substitute our judgment for that of the finder of fact.

**Underwood ex rel. Underwood v. Wind**, 954 A.2d 1199, 1206 (Pa. Super. 2008) (citation omitted).

Specifically, SHMS asserts that "[i]t is axiomatic that punitive damages cannot be awarded for a breach of contract. It does not matter how the breach of contract is categorized. The bottom line is that … the defendant must first be found liable for some tort before punitive damages can be

- 4 -

awarded." SHMS's Brief at 18 (citations omitted). According to SHMS, "Ms. Fiumara's sole tort claim — for intentional infliction of emotional distress — was correctly thrown out after she failed to introduce the requisite 'expert medical testimony' to support her claim. At that point, Ms. Fiumara's case was reduced to one for breach of contract, and punitive damages should have been off the table." *Id.* at 19-20 (citations omitted).[1] We agree.

This Court has previously stated that "[t]he law is clear that punitive damages are not recoverable in an action for breach of contract." *Thorsen v. Iron and Glass Bank*, 476 A.2d 928, 932 (Pa. Super. 1984) (citations omitted). *See also G.J.D. by G.J.D. v. Johnson*, 713 A.2d 1127, 1129 (Pa. 1998) ("Punitive damages may be imposed for torts that are committed willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured.") (citation and internal quotations omitted); *DiGregorio v. Keystone Health Plan East*, 840 A.2d 361, 370 (Pa. Super. 2003) ("It is settled law that one cannot recover punitive damages independently from an underlying cause of action. … Even if the cause of

---

[1] As the trial court acknowledged, SHMS argued that Ms. Fiumara's claim for intentional infliction of emotional distress required "medical proof of such distress[,]" and that "[t]here was no such medical evidence here[.]" TCO at 4. Indeed, "our Supreme Court clearly articulated … that, to the extent the tort of [intentional infliction of emotional distress] is recognized in this Commonwealth, recovery is limited to those cases in which competent medical evidence of emotional distress is presented by the claimant." *Gray v. Huntzinger*, -- A.3d --, 2016 WL 4533781, at *5 (Pa. Super. 2016) (citations omitted).

action for breach of contract had not been resolved, [the a]ppellants could not recover punitive damages for an action solely sounding in breach of contract.") (citations omitted). Moreover, the trial court apparently dismissed Ms. Fiumara's intentional infliction of emotional distress claim, so punitive damages could not be premised on that tort.[2]

Despite dismissing Ms. Fiumara's tort claim for intentional infliction of emotional distress, the trial court reasoned that it could still award punitive damages because "the [f]acts herein show a 'wrongful eviction' by SHMS, which is a tort, and as a result the award of punitive and exemplary damages is appropriate." TCO at 4. Ms. Fiumara likewise contends that she "pled and proved that she was wrongfully and illegally evicted," which thereby permits an award of punitive damages. *See* Ms. Fiumara's Brief at 13 (capitalization omitted).[3]

_____

[2] *See* note 1, cited *supra*. SHMS also points out that "[n]either counsel addressed the claim for intentional infliction of emotional distress during closing argument; the jury was never instructed on the elements of that claim; and the resulting verdict forms did not include a question regarding such a claim." SHMS's Brief at 6 n.3. *See also* Ms. Fiumara's Brief at 8-9 (acknowledging that the claim of intentional infliction of emotional distress was not submitted to the jury).

[3] Ms. Fiumara seems to argue that the facts established at trial support recovery for the tort of wrongful eviction and, as such, SHMS is liable for that tort. However, she provides no authority to support that she was not required to distinctly raise her wrongful eviction tort claim at trial. Additionally, we note that the parties dispute whether the tort of wrongful eviction was even properly pled by Ms. Fiumara. *See* Ms. Fiumara's Brief at 17-18; SHMS's Reply Brief at 2-3. Because we dispose of this matter on other grounds, we need not determine that issue herein.

Yet, liability for the tort of wrongful eviction was never raised at trial, let alone proven. Rather, the trial court and the parties all agree that, following the jury trial, SHMS was found liable for breach of contract and acting in an outrageous fashion against Ms. Fiumara. TCO at 1 ("After close of testimony[,] I directed a verdict on the Breach of Contract claim but left the issue of damages for that breach to the jury. … I also submitted to the jury the question of whether SHMS had acted in an 'outrageous fashion' against Fiumara. It found that it had."); SHMS's Brief at 7 ("After closing arguments, the trial court issued specific instructions regarding the amount of damages for a breach of contract, as well as 'the issue of outrageous[ness].'"); Ms. Fiumara's Brief at 9 ("The jury awarded 'zero' damages for breach of contract but answered 'yes' that [SHMS's] conduct was 'outrageous[.']"). Significantly, no directed verdict was entered, nor did the jury find, SHMS liable for the tort of wrongful eviction.[4]

_____

[4] It is well-established that the breach of contract and wrongful eviction are distinct actions; accordingly, they are not synonymous or interchangeable, even though they may arise from the same set of operative facts. ***See Kuriger v. Cramer***, 498 A.2d 1331, 1338 (Pa. Super. 1985) ("An eviction is an act by a landlord or a third person that interferes with a tenant's possessory right to the demised premises. If that act is wrongful, the tenant may sue for damages in trespass or assumpsit.") (citations omitted). We note that, under our Rules of Civil Procedure, "[i]f a transaction or occurrence gives rise to more than one cause of action heretofore asserted in assumpsit and trespass, against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person." ***See*** Pa.R.C.P. 1020(d). While this rule permits separate counts to be asserted in one complaint, it does not make those separate counts one and the same.

Moreover, when the trial court inquired about the allegations at issue in Ms. Fiumara's case at trial, her counsel did not raise a claim for the tort of wrongful eviction:

> [Trial Court]: Now, your allegations are what? Your counts are what?
>
> [Ms. Fiumara's Counsel]: My count is breach of contract for the monetary damages….
>
> And in addition, a count for intentional infliction of emotional distress.
>
> There was a separate count added for punitive damages, but as Your Honor said, that's not dealt with in this manner, so I have two counts.

N.T. Jury Trial, 3/23/2015, at 386-87.[5]

Because Ms. Fiumara did not establish liability for — or even raise — the tort of wrongful eviction at trial, it could not be the basis for punitive damages here.[6] ***See, e.g.***, ***McShea v. City of Philadelphia***, 995 A.2d 334,

---

[5] Similarly, when SHMS asserted at trial that punitive damages must arise from a tort, Ms. Fiumara did not make any mention of the tort of wrongful eviction in order to support such damages. N.T. Jury Trial, 3/26/2015, at 421-22.

[6] We are also not persuaded by Ms. Fiumara's argument that the punitive damages award must stand in this case because "Pennsylvania law recognizes a claim for punitive damages where a landlord acts with malice and oppression in evicting its tenant…." Ms. Fiumara's Brief at 20. Upon reviewing the cases proffered by Ms. Fiumara in support of this assertion, we concur with SHMS that these "cases merely hold that a dispossessed tenant may recover punitive damages in a tort (or trespass) action against the landlord." SHMS's Reply Brief at 2-3, n.2. However, as stated above, Ms. Fiumara did not raise a claim for the tort of wrongful eviction or trespass at trial.

340 n.5 (Pa. 2010) ("Punitive damages are awarded in tort actions, not for breach of contract.") (citation omitted); *DeLuca v. Fidelity Bank*, 422 A.2d 1159, 1161 (Pa. Super. 1980) ("No punitive damages can be recovered on a breach of contract claim.") (citation omitted). *See also Hilbert v. Roth*, 149 A.2d 648, 652 (Pa. 1959) ("The right to punitive damages is a mere incident to a cause of action … and not the subject of an action in itself. Hence, since plaintiff no longer has a cause of action of which his claim for punitive damages may be an element, that claim must fail."). Accordingly, we reverse and vacate the trial court's award of punitive damages, including the award of attorney's fees.[7]

Second, we consider whether the trial court erred in awarding Ms. Fiumara a new trial limited to the issue of damages for breach of contract. SHMS argues that "the jury's $0 finding was fully supported by the record evidence, including the lack of any concrete evidence of the expenses Ms. Fiumara actually paid as a result of her move, and Ms. Fiumara's failure to mitigate her damages[.]" SHMS's Brief at 17. Moreover, SHMS claims that

---

[7] The jury added attorney's fees onto its assessment of punitive damages. *See* Ms. Fiumara's Brief at 10 ("After further deliberations, the jury returned a verdict awarding $13,000 punitive damages 'plus additional legal fees incurred by [Ms. Fiumara].'"); SHMS's Brief at 22 ("As there was no basis for such an instruction or the resulting award (and as the award was essentially the fruit of the poisoned punitive damages tree), the award of 'legal costs' should also be vacated."). Because we reverse and vacate the punitive damages award, we also reverse and vacate the award of attorney's fees included therein.

"there was no indication that the jury's $0 finding was the product of some improper motivation" and the trial judge purportedly "did not explain, in any detail, how or why that $0 finding 'shocked' his conscience." ***Id.***

"It is settled that the grant or denial of a new trial rests in the discretion of the trial court." ***Livelsberger v. Kreider***, 743 A.2d 494, 495 (Pa. Super. 1999) (citation omitted). This Court has explained that "in reviewing an order to grant a new trial our standard of review is limited to determining whether the trial court abused its discretion or committed an error of law." ***Id.*** (citations omitted). "A trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it 'shocks one's sense of justice.'" ***Id.*** (citations omitted).

Our Supreme Court has further explained:

> An appellate court by its nature stands on a different plane than a trial court. Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence, an appellate court's review rests solely upon a cold record. Because of this disparity in vantage points an appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge. Rather our court has consistently held that appellate review of the trial court's grant of a new trial is to focus on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict. In that regard the Superior Court must review a trial court's decision to grant a new trial in the same manner as we have required review of the denial of a new trial.
>
> In reviewing the entire record to determine the propriety of a new trial, an appellate court must first determine whether the trial judge's reasons and factual basis can be supported. Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasons should prevail. It is not the place of an appellate court to invade the

- 10 -

trial judge's discretion any more than a trial judge may invade the province of a jury, unless both or either have palpably abused their function.

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must "examine the record and assess the weight of the evidence; not, however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury." Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

*Thompson v. City of Philadelphia*, 493 A.2d 669, 672-73 (Pa. 1985)

(citations omitted).

Here, the trial court observed:

The real basis of Fiumara's Motion is the fact that the jury awarded "zero" damages. The defense argued that the money advanced by Fiumara's children were "gifts" and there[fore] no damages should be awarded. Obviously, Fiumara was forced to expend all of her monthly income to stay in her new lodging and that was not enough![] The children had to come to the rescue. Whether there were gifts or not is unclear and in any event the wrongful eviction causes economic harm to Fiumara. The exact amount and the question of gift *vel non* can be addressed in the new trial. It is clear to me that Fiumara suffered some loss and this is sufficient for my action herein. Further, my conscience is shocked by the impecunious nature of this verdict.

TCO at 3-4 (emphasis in original).

We cannot conclude that the trial court palpably abused its discretion in granting a new trial pertaining to the issue of damages for breach of contract. We agree with the trial court that it is clear that Ms. Fiumara suffered **some loss** as a result of the breach. SHMS's arguments to the contrary are specious. SHMS first argues that "Ms. Fiumara did not testify that she incurred a set sum of expenses as a result of her move." SHMS's

- 11 -

Brief at 24. It states that "[a]lthough [the Dwight Avenue] apartment … was more expensive than Dormont Place, Ms. Fiumara's children paid a significant percentage of the increased rent and utility costs, as well as her moving and storage costs, and she never paid them back." *Id.* at 14. To the extent she relied on her children to help cover her increased expenses, it is confounding to us — given the present record — to characterize their support as a "gift" and thereby conclude that Ms. Fiumara suffered no economic loss as a result of her move. While there is testimony that Ms. Fiumara had not yet paid her children back, SHMS cites no evidence that their assistance was a mere gift that need not be repaid. If anything, Ms. Fiumara's testimony establishes the opposite:

> [Ms. Fiumara's counsel]: [] Were you able to pay for that?
>
> [Ms. Fiumara]: No.
>
> [Ms. Fiumara's counsel]: Was that something that you had to borrow money from your children for?
>
> [Ms. Fiumara]: Yes. *I borrowed a lot.*

N.T. Jury Trial, 3/24/2015, at 135 (emphasis added).

> [Ms. Fiumara's counsel]: Your children paid some of them?
>
> [Ms. Fiumara]: Subsidized a lot of income.
>
> [Ms. Fiumara's counsel]: *Do you have to pay your children back?*
>
> [Ms. Fiumara]: *Yes.*
>
> [Ms. Fiumara's counsel]: *Do your children expect to be paid back?*
>
> [Ms. Fiumara]: *I would like to. Well, they don't have a lot of money so.*

*Id.* at 146 (emphasis added).

Thus, our review of the present record does not demonstrate that the trial court exceeded the limits of its judicial discretion in awarding a new trial as there is no basis to find that the financial assistance of Ms. Fiumara's children was given with no expectation of repayment.

Second, SHMS insists that "the jury had a substantial basis to find that Ms. Fiumara failed to mitigate her damages." SHMS's Brief at 24. Specifically, it contends that "[b]y not discussing the Notice [of termination of the lease] or her proposed termination with Ms. Knowlson (the Dormont Place Property Manager), or anyone else from SHMS, and not forcing SHMS to file an eviction proceeding, Ms. Fiumara wasted two, early opportunities to avoid a move in the first place." *Id.* at 25. We find this argument to be illogical. As the trial court observed, Ms. Fiumara left because **she was told to leave**. **See** TCO at 3. If the jury actually awarded zero damages due to a failure to mitigate, it would surely shock our conscience as well, as Ms. Fiumara was simply following Ms. Knowlson's command. As such, SHMS has not persuaded us that the trial court abused its discretion by awarding a new trial on this basis as well.

To summarize, we affirm the trial court's order awarding a new trial limited to the issue of damages for SHMS's breach of a lease agreement, and reverse and vacate the trial court's award of punitive damages, including the award of attorney's fees.

Order affirmed in part and reversed in part. Remand for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Musmanno joins this memorandum

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2016