J-A10038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LEO HERNANDEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN E. QUINN, ESQUIRE, THE | : | No. 2017 EDA 2017 |
| LAW OFFICES OF BRIAN E. QUINN, | : | |
| AND BRIAN E. QUINN ESQUIRE, PC | : | |

Appeal from the Order Entered May 17, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  161001514

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY RANSOM, J.:                    **FILED JUNE 27, 2018**

Appellant Leo Hernandez appeals from the order of May 17, 2017, that
sustained the preliminary objections of Appellees Brian E. Quinn, Esquire
("Mr. Quinn"), The Law Offices of Brian E. Quinn, and Brian E. Quinn,
Esquire, PC, to Appellant's second amended complaint ("the Complaint") and
that dismissed the Complaint with prejudice.  We affirm in part and reverse
in part.  We reverse the trial court's ruling sustaining Appellees' preliminary
objections to the counts of invasion of privacy based on intrusion upon
seclusion, invasion of privacy based upon public disclosure of private facts,
invasion of privacy based upon publicity placing another in a false light
before the public, and intentional infliction of emotional distress; we

_____
*   Retired Senior Judge assigned to the Superior Court.

reinstate those claims. We affirm the trial court's rulings as to all remaining preliminary objections and its dismissal of all other counts.

In January 2013, Appellant, a registered nurse, testified[1] in criminal court against Charles Engelhardt, who was convicted of "one count each of endangering the welfare of a child, corruption of minors, and indecent assault." ***Commonwealth v. Engelhardt***, No. 2040 EDA 2013 (unpublished memorandum at 1) (Pa. Super. filed Mar. 25, 2015) [hereinafter ***Engelhardt***] (footnote omitted) (affirming judgment of sentence); ***see id.*** at 3 (Appellant's testimony). During his criminal trial and appeal, Mr. Engelhardt was represented by Michael J. McGovern, Esquire, from the firm McElroy, Deutsch, Mulvaney & Carpenter, LLP ("McElroy Deutsch"). Appellant now alleges that Mr. McGovern attempted to "smear" Appellant in order to damage Appellant's credibility. The Complaint at 4-6, 25 ¶¶ 13, 20, 90.[2]

In March 2013, Appellant initiated an unrelated civil medical malpractice claim against Jay Glickman, D.O., and Independence Medical

---

[1] ***See*** Court of Common Pleas Docket No. CP-51-CR-0003525-2011, Trial Court Opinion, 12/17/13, at 3.

[2] According to the Complaint, the victim in ***Engelhardt*** also filed a civil suit against Mr. Engelhardt and Mr. Engelhardt's former employer, the Archdiocese of Philadelphia. The Complaint at 4 ¶ 8. The complaint further alleged that Mr. McGovern claimed that Appellant "perpetrated a fraud" by "scheming" with the victim in order to "get paid" in the victim's civil case. ***Id.*** at 5 ¶ 13.

Associates, P.C. ("the Glickman Defendants"), *Hernandez v. Glickman*, Court of Common Pleas of Philadelphia County Civil Division Docket No. 130304392 [hereinafter *Glickman*]. Appellees were personal disciplinary counsel for the Glickman Defendants. The Complaint at 6 ¶ 20B. During pretrial discovery, both Appellant and his mother gave depositions.

In October 2015, Appellant commenced a civil action against Mr. McGovern and McElroy Deutsch, *Hernandez v. McGovern*, Court of Common Pleas of Philadelphia County Civil Division Docket No. 151001280 [hereinafter *McGovern*].[3] The complaint in *McGovern* alleged defamation, injurious falsehood, invasion of privacy based upon three different theories, intentional infliction of emotional distress, illegal distribution of confidential information, tortious interference with contractual relationship, and civil conspiracy.

In October 2016, Appellant commenced this current civil action against Appellees, *Hernandez v. Quinn*, Court of Common Pleas of Philadelphia County Civil Docket No. 161001514, by writ of summons. In November 2016, Appellant filed a complaint. In December 2016, Appellees filed preliminary objections to the complaint.[4] Before the trial court entered an

---

[3] As of the date of this memorandum, that matter is ongoing.

[4] Appellees' preliminary objections to the initial complaint and preliminary objections to the first amended complaint raised identical challenges as their preliminary objections to the Complaint.

- 3 -

order on the preliminary objections, in January 2017, Appellant filed an amended complaint, and Appellees once more filed preliminary objections.

Again, before the trial court entered an order on the preliminary objections to the amended complaint, in February 2017, Appellant filed the Complaint,[5] which alleged the following facts:

20. . . . [Mr.] McGovern . . . acquired [Appellant]'s private and confidential medical records, psychiatric records, and civil deposition, which he knew he had no authorization to have, and further distributed those records in and around Philadelphia and Pennsylvania to lawyers, bloggers, the press, and the public at large.

20A . . . [Mr.] McGovern and McElroy Deutsch admitted in response to [Appellant]'s discovery requests in this case, and also a court order compelling answers to those discovery requests, that . . . [Mr.] Quinn had secretly given them [Appellant]'s litigation, medical, and psychiatric records—as well as pictures.[6] . . .

20C At the time of the distribution in August and September 2014, none of these litigation records, medical records, and/or pictures had been made public or were filed on the docket in [Appellant]'s medical malpractice case. . . .

20D [Mr.] McGovern had to obtain these records from [Mr.] Quinn, personal counsel for the medical malpractice defendant, [the Glickman Defendants,] precisely because the records were not public. . . .

---

[5] *i.e.*, the second amended complaint.

[6] Later in the Complaint, Appellant clarified that these photographs included "naked pictures" of him, only intended for attorneys in **Glickman**. The Complaint at 24 ¶ 87C.

20F   [Mr.] Quinn sent an email (included in Exhibit 1[7] to th[e C]omplaint) to [Mr.] McGovern at 3:39 pm on September 18, 2014, with attachments identified as [Appellant]'s medical records from Belmont Behavioral Health and exhibits from [Appellant]'s deposition.

20G   [Mr.] Quinn sent an email (included in Exhibit 1 to th[e C]omplaint) to [Mr.] McGovern at 3:42 pm on September 18, 2014, with the attachments identified as pictures of [Appellant] and [Appellant]'s house.[8]

20H   [Mr.] Quinn sent an email (included in Exhibit 1 to th[e C]omplaint) to [Mr.] McGovern at 3:43 pm on September 18, 2014, with the attachments identified as pictures of [Appellant].

20I   [Mr.] Quinn sent an email (included in Exhibit 1 to th[e C]omplaint) to [Mr.] McGovern at 3:44 pm on September 18, 2014, with the attachments identified as pictures of [Appellant].[9]

20J   [Mr.] Quinn sent an email (included in Exhibit 1 to th[e C]omplaint) to [Mr.] McGovern at 3:45 pm on September 18, 2014, stating that he would provide to Mr. McGovern the depositions of [Appellant] and [Appellant]'s mother.

---

[7] According to Exhibit 1, Mr. McGovern received Appellant's "deposition, exhibits to that deposition, photographs, and drug treatment records" for Appellant from Mr. Quinn.  The Complaint, Ex. 1, Def., Michael McGovern, Esquire Supp. Answers to Pl.'s Interrogs. in **McGovern**, 8/15/16, at ¶ 7, 8, 18.

[8] Although the photographs themselves were not attached to the Complaint, the file name of one of the attachments is "Leo naked at new home dec 2011.JPG".  The Complaint, Ex. 1, Email from Mr. Quinn to Mr. McGovern (Sept. 18, 2014, 3:42 p.m.).

[9] Although these photographs themselves were also not attached, the file names of some of the attachments to the email were "Leo naked after shower.JPG", "Leo naked at new home dec 2011.JPG", "Leo naked at work.JPG", "Leo post orchiectomy to show me what the loss of testicle looked like.JPG".  The Complaint, Ex. 1, Email from Mr. Quinn to Mr. McGovern (Sept. 18, 2014, 3:44 p.m.).

20K [Mr.] Quinn received an email (included in Exhibit 1 to th[e C]omplaint) from a McElroy Deutsch employee named Tracey McQuaid at 7:36 am on September 19, 2014, stating that a "runner" would pick up the depositions of [Appellant] and [Appellant]'s mother.

20L On or around September 19, 2014, [Mr.] Quinn provided the depositions of [Appellant] and/or [Appellant]'s mother to a courier and/or a runner.

20M On or around September 19, 2014, someone acting at the direction of and/or on behalf of [Mr.] Quinn, through an agency relationship and/or employment, provided the depositions of [Appellant] and/or [Appellant]'s mother to a courier and/or a runner.

21. The privacy of those records are protected by law and [Mr.] McGovern had absolutely no authorization to receive or distribute [Appellant]'s medical, psychiatric, and legal records. [Mr.] McGovern's conduct is a shocking breach of [Appellant]'s privacy rights, and his conduct in doing so was in violation of the Rules of Civil Procedure, Rules of Criminal Procedure, the Philadelphia Civil Rules, Disciplinary rules, and state/federal law (such as HIPAA) including the state and federal constitutions. . . .

24. In addition, [Appellant]'s deposition from [*Glickman*] was anonymously mailed to [Appellant]'s employer and the state nursing board in an unmistakable attempt to have him fired from his job. . . .

25A Upon information and belief, [Mr.] Quinn was involved in the distribution of [Appellant]'s medical malpractice deposition to his employer.

25B [Mr.] Quinn wrote the document attached as Exhibit 2[10] to th[e C]omplaint.

_____

[10] Exhibit 2 appears to be a one-page cover letter for the copy of Appellant's deposition that was mailed to his employer, but it is not labelled as such and does not mention the deposition in the text. The letter is to the attention of "Jill Stunkard MSN RN" and is undated and unsigned. The letter is copied
*(Footnote Continued Next Page)*

- 6 -

25C Someone acting at the direction and/or on behalf of [Mr.] Quinn, through an agency relationship and/or employment, wrote the document attached as Exhibit 2 to th[e C]omplaint.

25D [Mr.] Quinn mailed the document attached as Exhibit 2 to th[e C]omplaint.

25E Someone acting at the direction of and/or on behalf of [Mr.] Quinn, through agency relationship and/or employment, mailed the document attached as Exhibit 2 to th[e C]omplaint.

25F [Mr.] Quinn knows the identity of the individual who mailed the document attached as Exhibit 2 to th[e C]omplaint.

25G [Mr.] Quinn knows the identity of the individual who mailed the envelope attached as Exhibit 3[11] to th[e C]omplaint.

25H [Mr.] Quinn knows the identity of the individual who handwrote the addresses on the envelope attached as Exhibit 3 to th[e C]omplaint.

The Complaint at 6-10 ¶¶ 20-20A, 20C-D, 20F-M, 21, 24, 25A-H.

_____
(Footnote Continued) ───────────

("cc:") to "Richard Greenberg MD", "Deborah Cattolico BSN CMSNN MSN", and "PA State Board of Nursing".

[11] Exhibit 3 to the Complaint is a photocopy of the front and back of an envelope with the handwritten mailing address of "Einstein Medical Center, Jill Stunkard MSN RN, 5501 Old York Rd, Philadelphia, PA 19141" and with the handwritten return address of "Einstein Med. Ctr. – Elkins Park, 60 Township Rd, Elkins Park, PA 19027."  There is no address to or from Appellees, McElroy Deutsch, or Mr. McGovern.  The Complaint, Ex. 3, at 1-2.  Additionally, the postmark on the envelope is from "Doylestown, PA 18901" in August 2014.  *Id.* at 1; *accord* the Complaint at 9 ¶ 24 ("Discovery obtained from the United States Post Office revealed that whoever sent these documents did so from the Doylestown, PA post office.").

(We are uncertain why Appellant draws the court's attention to the fact that the envelope was mailed from Doylestown, as the Complaint avers that Appellant, Mr. McGovern, McElroy Deutsch, Mr. Quinn, The Law Offices of Brian E. Quinn, and Brian E. Quinn Esquire, PC, all have Philadelphia addresses.  The Complaint at 14-15 ¶¶ 36, 39, 43, 43D, 43F, 43I.)

The Complaint pleaded the following causes of action: invasion of privacy based upon intrusion upon seclusion, public disclosure of private facts, and false light; intentional infliction of emotional distress ("IIED"); illegal distribution of confidential information; tortious interference with contractual relationship ("tortious interference"); and civil conspiracy. *Id.* at 22-34 ¶¶ 77-118.

For the count of invasion of privacy based upon public disclosure of private facts, the Complaint added that Appellees "acquired" Appellant's "private and confidential records and pictures, and the facts contained therein, and distributed them to [Mr.] McGovern and others without any authorization whatsoever." *Id.* at 24 ¶ 87A. It continues: "Upon information and belief, [Appellees] distributed these confidential records to other individuals and entities who had no authorization to possess[] them, including [Appellant]'s place of employment." *Id.* at ¶ 87B.

For the count of false-light invasion of privacy, the Complaint further stated:

> 95A [Appellees'] distribution of [Appellant]'s litigation records to his employer and the nursing board, as well as being malicious, was done to portray Appellant in a false light at his workplace. [Appellee] highlighted specific portions of the long deposition out of context (from both the entire deposition and the overall litigation), specifically for the purpose of having [Appellant] fired.
>
> 95B At all points [Mr.] Quinn intended to portray [Appellant] in 2014 as a drug addict and otherwise immoral person . . .
>
> 95C [Appellees] also distributed the litigation records, medical records, and pictures to [Mr.] McGovern for the same purpose

demonstrated by [Mr.] Quinn when he sent the litigation records to [Appellant]'s employer and the nursing board. [Mr.] Quinn knew or should have known, and intended, that [Mr.] McGovern would also improperly use the documents.

95D   The articles in question also falsely portray [Appellant] in a false light as they omit many contextual facts which would place [Appellant] in a different light if they were known to the reader.

*Id.* at 26-27 ¶¶ 95A-D.

For the count of tortious interference, the Complaint also stated that Appellant "had and has a contractual employment relationship with Albert Einstein Medical Center." *Id.* at 32 ¶ 109.

In March 2017, Appellees filed preliminary objections requesting demurrer on all counts of the Complaint. Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 3-4, 6-7, 9, 11-12, 14-15. Preliminary objections of the ground of demurrer – *i.e.*, legal insufficiency of the pleading – are raised pursuant to Pa.R.C.P. 1028(a)(4). Appellees' preliminary objections contained averments raising facts that were not already of record. Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 5-7, 15-17 ¶¶ 23, 25, 30, 33, 36, 72-80. Specifically, these were facts about *Glickman* that were not included in the Complaint, including that Appellant's testimony in his deposition for *Glickman* allegedly "contradicted" his in-court testimony in *Engelhardt*; a purported release from a settlement agreement in *Glickman* was attached to the preliminary objections as Exhibit A ("the Release"). *Id.* at 5, 7, 15-16 ¶¶ 23, 25, 36, 74, 76 & Ex. A. Appellant then filed preliminary objections to Appellees' preliminary objections.

On May 17, 2017, the trial court entered two orders: one overruled Appellant's preliminary objections to Appellees' preliminary objections; the other sustained Appellees' preliminary objections to the Complaint "in their entirety" and dismissed the Complaint with prejudice. The trial court simultaneously issued a "Memorandum in Support of Order Dismissing [the] Complaint" and a "Supplemental Memorandum Relating to the General Release Executed by [Appellant]."

In June 2017, Appellant timely filed this appeal. The trial court did not order and Appellant did not provide a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), but the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant now raises the following issues on appeal:

[1.] Affirmative defenses may not be advanced at the preliminary objection stage. Was it reversible error for the [trial] court to prematurely adjudicate several affirmative defenses-- over [Appellant]'s objection--when [Appellant] was prejudiced and harmed by these improper rulings which were done in violation of the Rules?

[2.] Did the [trial] court misinterpret the plain language and scope of the Release which in no way applies to the actions of [Appellees] where [they] engaged in a pattern of secretive witness intimidation and retaliation against [Appellant] by distributing his medical and psychiatric records to third parties **outside** the malpractice action, which was illegal, violated public policy, and went far beyond the scope of the Release?

[3. Appellees] never verified their pleadings. Neither the Release--nor any of the allegations surrounding the Release-- which the [trial] court relied upon were verified by anyone. Was it reversible error when the [trial] court failed to sustain [Appellant]'s preliminary objections concerning the failure of [Appellees] to submit a verification for substantive facts and

- 10 -

documents which the [trial] court relied upon in coming to its findings?

[4.    Appellant] had a constitutional right to privacy for his psychiatric and medical records.  Was it reversible error for the [trial] court to dismiss this cause of action when there was irrefutable documentary proof that [Appellees] had in fact illegally distributed [Appellant]'s confidential records?

[5.    Appellant] retains full medical privacy rights **outside** of a medical malpractice action.  [Appellees] distributed [Appellant]'s medical and psychiatric records to third parties **outside** the malpractice action **without** authorization and for an **improper** purpose.  Did the [trial] court wrongly find that [Appellant] had no privacy rights for his medical records and erroneously dismiss the invasion of privacy claims?

[6.    Appellant] pled that [Appellees] anonymously sent litigation records to [Appellant]'s employer with the intent and purpose of having [Appellant] fired, and distributed his confidential psychiatric records to third parties.  Did the [trial] court erroneously dismiss [Appellant]'s tortious interference . . . and [IIED] claims because it failed to credit these facts in [Appellant]'s favor?

Appellant's Brief at 9-10 (emphasis in original) (issues re-ordered to facilitate disposition and suggested answers omitted).

In considering an appeal from an order granting preliminary objections in the nature of a demurrer, which is a question of law, our standard of review is *de novo* and our scope of review is plenary.

The court may sustain preliminary objections only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief.  For the purpose of evaluating the legal sufficiency of the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts.

***Heldring v. Lundy Beldecos & Milby, P.C.***, 151 A.3d 634, 641 (Pa. Super. 2016) (citations omitted) (some formatting added).

- 11 -

"In ruling on preliminary objections in the nature of a demurrer, the trial court may consider no testimony or evidence outside of the complaint." ***Schmidt v. Deutsch Larrimore Farnish & Anderson, LLP***, 876 A.2d 1044, 1046 (Pa. Super. 2005). "[P]reliminary objections in the nature of a *demurrer* . . . should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action." ***Langella v. Cercone***, 34 A.3d 835, 838 (Pa. Super. 2011) (citation omitted).

### Affirmative Defenses, the Release, and Verification

We begin by addressing Appellant's challenges to the inclusion of "affirmative defenses"[12] and the Release in Appellees' preliminary objections and the lack of a verification with those preliminary objections. Appellant's Brief at 44-48 (Appellant's argument about "affirmative defenses . . . at the preliminary objection stage"), 65-66 (Appellant's argument about the lack of verification, including challenges to Appellees' failure to verify the Release and "any of the allegations surrounding the Release" (citing ***Atl. Credit & Fin., Inc. v. Giuliana***, 829 A.2d 340, 344 (Pa. Super. 2003)).

Appellant is correct that Appellees should not have included any new factual averments – *i.e.*, averments that were not included in the Complaint

---

[12] We do not necessarily subscribe to Appellant's characterization of certain paragraphs of Appellees' preliminary objections to the Complaint as "affirmative defenses," but we need not reach this issue.

-- in their preliminary objections pursuant to Pa.R.C.P. 1028(a)(4) requesting demurrer. *See **Langella***, 34 A.3d at 838; ***Schmidt***, 876 A.2d at 1046. To do so is an improper "speaking demurrer." ***See, e.g.***, ***Welteroth v. Harvey***, 912 A.2d 863, 869 (Pa. Super. 2006); ***Regal Indus. Corp. v. Crum & Foster, Inc.***, 890 A.2d 395, 398 (Pa. Super. 2005). Any such facts, including the existence and content of the Release, should be stricken at this stage, ***see*** Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 5-7, 15-17 ¶¶ 23, 25, 30, 33, 72-80 & Ex. A. To the extent that the trial court considered them, it was in error.[13]

As a verification is only required where new averments of fact are pleaded and as we have eliminated all new averments of fact from the preliminary objections, there is no need for a verification, and any consideration of whether one should have been attached to the preliminary objections hence is moot. ***See*** Pa.R.C.P. 1024(a) (only pleadings "containing an averment of act not appearing of record in the action" require a verification).

**Illegal Distribution of Confidential Information**

Next, Appellant contends that he "had a constitutional right to privacy for his psychiatric and medical records" and that "it was reversible error for

---

[13] We make no determination as to Appellees' ability to introduce the Release and any other evidence about or from ***Glickman*** at any later stage of the current action.

- 13 -

the [trial] court to dismiss this cause of action for the illegal distribution of [his] confidential records." Appellant's Brief at 25.

However, we find no such tort as "illegal distribution of confidential information" in Pennsylvania, the Complaint at 30-31 ¶¶ 103-107, and Appellant provides us with no Pennsylvania authority to support this cause of action. Appellant's Brief, at 27, cites to a Supreme Court of Ohio case, **Hageman v. Sw. Gen. Health Ctr.**, 893 N.E.2d 153, 154, 156, 158 (Ohio 2008), recognizing this tort; however, in **Hageman**, only two justices joined the opinion, while two justices concurred, and two justices dissented. **Id.** at 158. We decline to create a new cause of action in Pennsylvania. Appellant's challenge thus fails to merit relief.

**Invasion of Privacy**

"[I]nvasion of privacy involves four separate torts: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness for commercial purposes; (3) publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." **Tagouma v. Investigative Consultant Servs., Inc.**, 4 A.3d 170, 174 (Pa. Super. 2010) (citation omitted). Here, Appellant contended that Appellees engaged in the first, third, and fourth torts. The Complaint at 22-27 ¶¶ 77-97.

Even though these are three separate causes of action, the trial court memorandum combined all three, writing:

- 14 -

> Not only did [Appellant] choose to place his personal life at issue when he filed a medical malpractice claim, [Appellant] testified in one of a series of very public and publicized criminal trials. . . . [Appellant's] actions and inactions were within the scope of legitimate public concern. He was "news" and newsworthy, even though he may not have sought nor wanted publicity. Moreover, it is well-established that a plaintiff in a civil case or a claimant in a Workers' Compensation matter have diminished expectations of privacy. A patient's privacy interests and rights to confidentiality are reduced when he files suit.

Trial Court Mem. in Supp. of Order Dismissing Appellant's the Complaint (TCM), 5/17/17, at 8-9 (citations omitted).

In his brief to this Court, Appellant likewise combines his argument about the dismissal of his invasion of privacy claims, contending that he "retain[ed] full medical privacy rights outside of a medical malpractice" action and that the trial court "wrongly found [he] had no privacy rights for his medical records and erroneously dismissed the invasion of privacy claims." Appellant's Brief at 30. He continues that the trial court "analyzed a completely wrong legal standard, failing to apply the correct legal analysis explained in **Moses v. McWilliams**," 549 A.2d 950, 959 (Pa. Super. 1988) (*en banc*). Appellant's Brief at 32.

Appellees raised separate preliminary objections to each of the three different invasion of privacy causes of action. We will consider each in turn.

### *Intrusion Upon Seclusion*

According to Appellees' preliminary objection to Appellant's cause of action for invasion of privacy based on intrusion upon seclusion, Appellant "gave up his right to 'seclusion' of the details of his personal life" by filing

- 15 -

***Glickman*** and thereby "chose to place his personal life, medical history, and social history in a public forum when he filed suit[.]" Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 4 ¶¶ 18, 21.

The trial court concluded that Appellant was "an involuntary public figure" – *i.e.*, an "individual[] who had not sought publicity or consented to it, but through their own conduct or otherwise became a legitimate subject of public interest" -- who "testified in one in a series of very public and publicized criminal trials." TCM at 8 (quoting Restatement (Second) of Torts § 652D cmt. f).[14] The trial court also found that Appellant's intrusion upon seclusion claim, the Complaint at 22-23 ¶¶ 77-84, did "not aver that [Appellees] were not properly or legitimately in possession of the challenged materials in the course of and scope of their representation of" the Glickman Defendants. TCM at 10.

However, Appellees' preliminary objections never raised the question of whether they had properly obtained the challenged materials nor contended that Appellant had relinquished his right to seclusion by testifying in ***Engelhardt***. Instead, the preliminary objections argued that Appellant had "given up his right to 'seclusion'" by initiating ***Glickman***. Prelim. Objs.

---

[14] Restatement (Second) of Torts § 652D cmt. f only applies to causes of action for invasion of privacy based upon publicity given to another's private life, not for intrusion upon seclusion.

of Appellees to the Complaint, 3/6/17, at 4 ¶ 21. Thus, the trial court decided this preliminary objection on an improper basis.

Based upon a *de novo* standard of review, **Heldring**, 151 A.3d at 641, we may now consider the merit of Appellees' actual preliminary objection to Appellant's intrusion upon seclusion claim. In doing so, we strenuously disagree with Appellees' interpretation that information acquired during discovery in a medical malpractice lawsuit is automatically "in a public forum." Appellees' Brief at 14. As this Court has asserted:

> [P]rivate documents collected during discovery are not judicial records. **Anderson v. Cryovac, Inc.**, 805 F.2d 1 (1st Cir.1986); **see also Seattle Times v. Rhinehart**, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). . . . [D]iscovery is essentially a private process. As stated by the Supreme Court in **Seattle Times**, "pretrial depositions and interrogatories are not public components of a civil trial." **Seattle Times**, 467 U.S. at 33, 104 S. Ct. at 2207. Thus, wrote the Court, "such proceedings were not open to the public at common law." **Id.** Justice Burger wrote separately in another Supreme Court opinion that "it has never occurred to anyone, so far as I am aware, that a pretrial deposition or pretrial interrogatories were other than wholly private to the litigants." **Gannett Company v. DePasquale**, 443 U.S. 368, 396, 99 S.Ct. 2898, 2914, 61 L.Ed.2d 608, 632 (1979).

**Stenger v. Lehigh Valley Hosp. Ctr.**, 554 A.2d 954, 960-61 (Pa. Super. 1989) (some citations omitted). Appellant's deposition and any other documents or information obtained by Appellees during discovery in **Glickman** had not been filed on that docket or otherwise entered into evidence in that case, the Complaint at 7 ¶ 20C, and hence were **not** publicly available judicial records. **See Stenger**, 554 A.2d at 960-61. Thus,

Appellees' contention that the challenged materials somehow became public and that their contents were no longer private and consequently could be disseminated indiscriminately is erroneous.

Additionally, a plaintiff's status as a public figure is not a defense to intrusion upon seclusion. The Restatement (Second) of Torts § 652B cmt. b (1977)[15] provides two useful examples:

> A, a woman, is sick in a hospital with a rare disease that arouses public curiosity. B, a newspaper reporter, calls her on the telephone and asks for an interview, but she refuses to see him. B then goes to the hospital, enters A's room and over her objection takes her photograph. B has invaded A's privacy. . .
>
> A, a professional photographer, seeking to promote his business, telephones B, a lady of social prominence, every day for a month, insisting that she come to his studio and be photographed. The calls are made at meal times, late at night and at other inconvenient times, and A ignores B's requests to desist. A has invaded B's privacy.

*Id.* illus. 1, 5. Therefore, even if an individual is the subject of public interest or is a public or socially prominent figure, his or her privacy may still be invaded pursuant to a theory of intrusion upon seclusion. Hence, even assuming that Appellant's decision to testify as what Appellees characterize as "a crucial witness in a highly publicized criminal trial," Appellees' Brief at

_____

[15] Although the Supreme Court of Pennsylvania has not officially adopted the definition of intrusion upon seclusion as set forth in the Restatement (Second) of Torts § 652B, this Court has relied upon it and its comments in analyzing such claims. *See, e.g.*, *Tagouma*, 4 A.3d at 174. In the absence of a contrary pronouncement by the Supreme Court, we are free to adopt sections of the Restatement in an appropriate case. *Newell*, 154 A.3d at 824 n.7.

14, made him a public figure, such status would not justify an intrusion upon his solitude or seclusion.[16]

Appellees' objection to Appellant's claim for invasion of privacy based on intrusion upon seclusion thus is unsupportable. For this reason, this objection should have been overruled, and we reverse the decision of the trial court and reinstate the count of invasion of privacy based on intrusion upon seclusion.

### Publicity Given to Private Life

The elements of an invasion of privacy claim based upon publicity given to private life are: "publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public." **Strickland v. Univ. of Scranton**, 700 A.2d 979, 987 (Pa. Super. 1997) (citation omitted).

Appellees preliminarily objected to this count, maintaining that, although the Complaint insists that "private facts" were disclosed, the Complaint fails to detail what those private facts were. Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 6 ¶ 29.

---

[16] Additionally, we are concerned that Appellees' suggestion that anyone who testifies in a criminal case could suddenly have his or her private information, including medical records and intimate photographs, considered publicly available would have a chilling effect on individuals' willingness to testify at criminal trials.

This assertion is incorrect. The Complaint is replete with allegations that Appellees disclosed specific private facts, including the unauthorized distribution of Appellant's medical records from Belmont Behavioral Health, drug treatment records, other medical and psychiatric records, and photographs of Appellant while naked. The Complaint at 6-8, 24 ¶¶ 20, 20A, 20C, 20F-20G, 20I, 21, 87C & Ex. 1, Def., Michael McGovern, Esquire Supp. Answers to Pl.'s Interrogs. in **McGovern**, 8/15/16, at ¶ 7, 8, 18 & Emails from Mr. Quinn to Mr. McGovern (Sept. 18, 2014, 3:42 and 3:44 p.m.).[17] Accordingly, Appellees' first preliminary objection to Appellant's claim of invasion of privacy based upon publicity given to private life fails.

Next, Appellees repeat the same objection that they made against the intrusion upon seclusion invasion of privacy claim – *i.e.*, that, "[b]y filing a civil suit alleging personal injuries, [Appellant] relinquished his expectation of privacy[,]" that Appellant's "personal life and medical issues became relevant and public issues in his civil suit[,]" and that Appellees thus cannot be held liable for merely giving further publicity to information about a party that is already public. Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 6-7 ¶¶ 32, 34. This objection fails for the same reason that it was

---

[17] "[T]he appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred." **N. Forests II, Inc. v. Keta Realty Co.**, 130 A.3d 19, 35 (Pa. Super. 2015). We thus have examined Exhibit 1 attached to the Complaint when determining the sufficiency of the facts averred.

unsuccessful under the invasion of privacy claim based on intrusion upon seclusion – *i.e.*, private documents collected during discovery are not judicial records and not public. **See Stenger**, 554 A.2d at 960-61.

For these reasons, none of Appellees' preliminary objections to the count of invasion of privacy based upon publicity given to private life are sustainable. Consequently, we reverse the trial court's decision to sustain these objections, and we reinstate this count.[18]

### Publicity Placing Another in a False Light Before the Public

"The tort of false light-invasion of privacy involves publicity that unreasonably places the other in a false light before the public." **Rush v. Phila. Newspapers, Inc.**, 732 A.2d 648, 654 (Pa. Super. 1999) (citations and internal quotation marks omitted). Appellees objected to this count on the basis that the Complaint did not plead facts alleging that they provided

---

[18] As with the preliminary objection to the previous invasion of privacy count, this preliminary objection only challenges whether the information disclosed was private. It does not raise any claims concerning the additional elements of invasion of privacy based upon publicity given to private facts, including whether the Complaint properly pleaded the element of "publicity" itself. Again, neither we nor the trial court could hence consider whether this element was properly pleaded. To the extent the trial court considered whether the Complaint sufficiently pleaded the element of publicity for the publicity given to private life cause of action, it did so erroneously. **See MacGregor v. Mediq Inc**., 576 A.2d 1123, 1128 (Pa. Super. 1990) ("matters not raised in preliminary objections may not be considered by the court *sua sponte*"); **Alumni Assoc., Delta Zeta of Lambda Chi Alpha Fraternity v. Sullivan**, 535 A.2d 1095, 1101 (Pa. Super. 1987) ("matters not raised in preliminary objections are not to be considered by the court *sua sponte*").

Appellant's deposition to the press or to Appellant's employer. Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 8 ¶ 40.

> "[P]ublicity" means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Thus, it is not an invasion of the right of privacy to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

***Doe v. Wyo. Valley Health Care Sys., Inc.***, 987 A.2d 758, 765-66 (Pa. Super. 2009) (internal citations, ellipsis, and some quotation marks omitted).

Here, the body of the Complaint itself only named one specific person to whom Appellees allegedly disclosed the challenged materials -- Mr. McGovern.[19] The Complaint at 6-8, 24 ¶¶ 20A, 20D, 20F-20M, 87A. As noted above, disclosure to one person is insufficient to establish the element of "publicity." ***See Doe***, 987 A.2d at 766.

However, the Complaint also averred that Mr. Quinn "knew or should have known, and intended, that [Mr.] McGovern would also improperly use the documents." The Complaint at 27 ¶ 95C; ***accord*** Appellant's Brief at 36. This alleged improper use of the documents by Mr. McGovern is that he gave the challenged materials to "bloggers, the press, and the public at large." The Complaint at 6 ¶ 20.

---

[19] Mr. McGovern is not named as a defendant in the Complaint.

Furthermore, the Complaint alleged that Appellees "distributed these confidential records to other individuals and entities who had no authorization to possess[] them, including [Appellant]'s place of employment." *Id.* at 24 ¶ 87B.[20]  The Complaint also later contends that Mr. Quinn "sent the litigation records to [Appellant]'s employer and the nursing board." *Id.* at 27 ¶ 95C.[21]

Accordingly, the Complaint alleged that Appellees directly sent the challenged materials to Mr. McGovern, Appellant's employer, and the nursing board and, through Mr. McGovern, indirectly sent these materials to bloggers, the press, and the public at large.  *Id.* at 6, 24, 27 ¶¶ 20, 87B, 95C.  The Complaint consequently communicated to many people, not just one person, and ergo sufficiently pleaded the element of publicity for the false-light invasion of privacy count.  *See Doe*, 987 A.2d at 765-66.

_____

[20] The false-light invasion of privacy claim is Paragraphs 92 to 97 of the Complaint.  The Complaint at 26-27 ¶¶ 92-97.  Paragraph 92 "incorporates by reference and realleges the **preceding** paragraph[.]" *Id.* at 26 ¶ 92 (emphasis added).  The factual allegation in Paragraph 87B can therefore be applied to the false-light invasion of privacy count.

[21] In addition, the cover letter attached to the Complaint as Exhibit 2 and the photocopy of the envelope attached to the Complaint as Exhibit 3 both explicitly listed "Jill Stunkard MSN RN" as the recipient and the letter indicated that it was copied to "Richard Greenberg MD" and "Deborah Cattolico BSN CMSNN MSN."  Hence, if we examine these exhibits and not just the text of the Complaint itself, *see N. Forests*, 130 A.3d at 35, then we could also find that Appellant has named other particular individuals as recipients of the challenged materials, not just Mr. McGovern.

Appellees also objected to the false-light count, because the Complaint failed to assert facts to establish that Appellees acted with malice. Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 8-9 ¶¶ 43, 45. *See* Appellant's Brief at 14.

"The required standard of fault in a false light claim is . . . actual malice. *See Time, Inc. v. Hill*, 385 U.S. 374, 387, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) (defining actual malice as 'knowledge that the statements are false or in reckless disregard of the truth')." *Rubin v. CBS Broad. Inc.*, 170 A.3d 560, 568 n.9 (Pa. Super. 2017). "Unlike the law of defamation, false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression." *Id.* at 568 (citation and internal brackets and ellipsis omitted).

Here, the Complaint stated that, when Appellees sent materials to Appellant's employer and to the nursing board, the Complaint at 24, 27 ¶¶ 87B, 95C, he "highlighted specific portions" with the intent "to falsely portray [Appellant] in 2014 as a drug addict and otherwise immoral person." *Id.* at 26 ¶¶ 95A-B. The Complaint also asserted that the blog articles that resulted from the materials sent by Appellees to Mr. McGovern "falsely portrayed [Appellant] in a false light as they omit many contextual facts which would place [Appellant] in a different light if they were known to the reader." *Id.* at 27 ¶ 95D. Thus, although the Complaint does not allege

that the challenged materials were "provably false," it instead expresses that the materials were "selectively publicized in a manner creating a false impression." **Rubin**, 170 A.3d at 568. The Complaint thereby sufficiently pleaded malice for the count of false-light invasion of privacy.

Therefore, Appellees' preliminary objections to the false-light invasion of privacy count should have been overruled, and demurrer should not have been granted on this count. We thus reinstate this claim.

## Tortious Interference

Next, Appellant maintains that he pleaded adequate facts to establish a legally sufficient cause of action for tortious interference. Appellant's Brief at 37. Specifically, he insists that the trial court "failed to credit" his averments that Appellees "anonymously sent litigation records to [his] employer with the intent and purpose of having [him] fired" and that Mr. Quinn was the individual "who was distributing [Appellant]'s records outside the [**Glickman**] litigation in the late summer of 2014." **Id.** at 37-38. He continued that the trial court "required of [him] a super[-]elevated level of proof not warranted by law" and erroneously "dismissed the case claiming the Complaint was contradictory," because the trial court "failed to realize that [Appellant] is permitted to plead claims in the alternative under the Rules of Civil Procedure[.]" **Id.** at 38, 42.

Appellees' preliminary objection to Appellant's tortious interference claim asserts that this count was legally insufficient, because "none of the

information [Appellant] claims to have been disclosed is false." Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 13 ¶ 63.

> Tortious interference with prospective or existing contractual relations consists of the following elements:
>
> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
>
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant; and
>
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

***Maverick Steel Co. v. Dick Corp./Barton Malow***, 54 A.3d 352, 354-55 (Pa. Super. 2012) (citation omitted).

"[T]he third element of the tort requires a showing that defendant's actions were not privileged." ***Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.***, 150 A.3d 957, 966 (Pa. Super. 2016) (citation and internal brackets omitted). "[O]ne who intentionally causes a third person not to perform a contract with another does not interfere improperly with the other's contractual relation by giving the third person truthful information." ***Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.***, 20 A.3d 468, 471 (Pa. 2011). We find no exception or qualification for matters that "are selectively publicized in a manner creating a false impression," as with claims for false-light invasion of privacy. ***Rubin***, 170 A.3d at 568.

Here, the Complaint contended that Appellees sent Appellant's deposition and litigation records from ***Glickman*** and other confidential records to his employer, Einstein Medical Center. The Complaint at 24, 27, 32 ¶¶ 87B, 95C, 109. At no point does the complaint maintain that any of Appellant's own deposition testimony was false or that any of the material contained in his litigation and other confidential records was false. ***See generally id.*** As giving a third party truthful information cannot be considered "improper" and as actions must be "improper" in order to fulfill the third element of tortious interference, by failing to plead that Appellees provided Einstein Medical Center with false information, the complaint failed to establish that Appellees' actions were not privileged and, accordingly, failed to plead the third element of tortious interference. ***Salsgiver***, 150 A.3d at 966; ***Walnut***, 20 A.3d at 471; ***Maverick***, 54 A.3d at 355.[22] Thus, we affirm the trial court's dismissal of this claim.

## IIED

Appellant raises the same contentions about the dismissal of his IIED claim as he did for his tortious interference claim. Appellant's Brief at 37-38, 43.

---

[22] We thus need not reach the issue of whether the trial court used an inappropriately heightened level of proof when evaluating whether Appellant sufficiently pleaded a tortious interference cause of action or if the trial court should have considered whether the Complaint was internally inconsistent. Appellant's Brief at 38, 42; ***see*** TCM at 11 ("The factual allegations of 'wrongful conduct' by [Appellees] are contradictory and unsupported.").

Appellees' preliminary objection to Appellant's IIED count stated that Appellant had not alleged any act so extreme or outrageous as would be sufficient to establish IIED. Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 9-10 ¶¶ 49-50 (citing **Hoy v. Angelone**, 720 A.2d 745, 753-54 (Pa. 1998) (conduct must be atrocious, "extreme[,] or clearly outrageous" and not even criminal conduct is always sufficient)).[23]

---

[23] We need not consider whether Appellant sufficiently pleaded other elements of IIED, as Appellees have only challenged whether the Complaint pleaded facts that, if true, would be sufficiently outrageous to support an IIED claim. Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 9-11 ¶¶ 48-53.

Ergo, we cannot consider whether the Complaint pleaded the remaining requirements of IIED, including the existence of a physical injury. **See Rolla v. Westmoreland Health Sys.**, 651 A.2d 160, 161-63 (Pa. Super. 1994) (appeal from order granting appellees' preliminary objections in the nature of a demurrer and dismissing with prejudice appellant's complaint, including claim for emotional distress; appellant asserted that emotional harm is just as damaging as physical harm and contended that "in the area of damages, it is believed that recent United States Supreme Court cases in the area of discrimination establish that physical harm is not necessary to have occurred"; this Court disagreed, holding that, for IIED, plaintiffs must allege physical injury); **Hart v. O'Malley**, 647 A.2d 542, 553-54 (Pa. Super. 1994) (appellants failed to state an IIED claim, because they "fail[ed] to allege physical injury").

Additionally, Appellees' preliminary objection to the IIED cause of action do not contend that the factual allegations supporting said claim were contradictory. Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 9-11 ¶¶ 48-53. Thus, the trial court should not have considered this question, as it did at TCM at 11. **See MacGregor**, 576 A.2d at 1128; **Alumni**, 535 A.2d at 1101. Hence, we also do not need to consider Appellant's argument that the trial court "failed to realize that [Appellant] is permitted to plead claims in the alternative under the Rules of Civil Procedure and dismissed the case claiming the Complaint was contradictory." Appellant's Brief at 42.

Appellees are correct that, in order to recover on a claim of IIED, "a plaintiff must prove that the defendant by extreme and outrageous conduct intentionally or recklessly caused severe emotional distress." ***Gray v. Huntzinger***, 147 A.3d 924, 927 (Pa. Super. 2016) (citation and internal brackets and quotation marks omitted), ***appeal denied***, 168 A.3d 1238 (Pa. 2017).

> The Restatement (Second) of Torts defines "extreme and outrageous conduct" as follows:
>
>> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

***Id.*** at 928 n.1 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Here, the Complaint asserts that, without Appellant's knowledge or consent, Appellees distributed his drug treatment, medical, and psychiatric records and photographs of him while naked, including one post-orchiectomy. The Complaint at 6-10, 24 ¶¶ 20-20A, 20C, 20F-G, 20I, 21, 25A-H, 87C & Ex. 1, Def., Michael McGovern, Esquire Supp. Answers to Pl.'s Interrogs. in ***McGovern***, 8/15/16, at ¶ 7, 8, 18 & Emails from Mr. Quinn to

Mr. McGovern (Sept. 18, 2014, 3:42 & 3:44 p.m.). A factfinder could conclude that any one of these allegations alone, if true, would be beyond the bounds of decency; the factfinder could further find that, if taken in combination, these allegations become atrocious and utterly intolerable. *See Gray*, 147 A.3d at 928. Although the main body of the Complaint only names one specific person to whom Appellees allegedly disclosed the challenged materials, Mr. McGovern, the Complaint at 6-8, 24 ¶¶ 20A, 20D, 20F-M, 87A,[24] a factfinder could still conclude that the distribution of these highly sensitive records and intimate photographs even to just one unauthorized individual would arise resentment in the factfinder. *See Gray*, 147 A.3d at 928.[25] Accordingly, Appellees' preliminary objection to Appellant's IIED claim is meritless, and, consequently, we reverse the trial court's decision sustaining this preliminary objection and reinstate Appellant's IIED claim.[26]

_____

[24] Although, as noted above, if we take into account the names listed on the documents attached to the Complaint as Exhibits 2 and 3, *see N. Forests*, 130 A.3d at 35, then Appellant also set forth that Appellees further disclosed the challenged materials to Nurse Stunkard, Dr. Greenberg, and Nurse Cattolico. The Complaint, Exs. 2-3.

[25] Unlike claims of invasion of privacy based upon publicity given to private life or placing another in a false light, IIED does not include the element of "publicity." *Compare Strickland*, 700 A.2d at 987, *and Rush*, 732 A.2d at 654, *with Gray*, 147 A.3d at 927.

[26] In its memorandum that accompanied the orders at issue, the trial court found that the Complaint presented insufficient factual allegations to support
*(Footnote Continued Next Page)*

\* \* \*

In conclusion, we reverse the trial court's grant of demurrer as to the counts of invasion of privacy based on intrusion upon seclusion, invasion of privacy based upon public disclosure of private facts, invasion of privacy based upon publicity placing another in a false light, and intentional infliction

_(Footnote Continued)_ ─────────

the IIED count, because the Complaint "assert[ed] more than once that the materials were sent to [Appellant's] employer 'anonymously[.]'" TCM at 11. The trial court concluded that this anonymity meant that the Complaint failed to "provide facts to support that [Appellees] distributed records[.]" **_Id._**

However, we fail to see any contradiction between the Complaint's factual averment that the materials were sent anonymously – _i.e._, without a sender's name attached – to Appellant's employer and the factual averment that Appellees were the senders who concealed their names. The Complaint at 9 ¶¶ 24, 25A.

Additionally, we fail to see any significant incongruity between the Complaint's averments that Mr. Quinn personally wrote and mailed Exhibit 2, the cover letter accompanying the mailing of Appellant's deposition in **_Glickman_**, or if he directed an agent or employee to write Exhibit 2 on his behalf. **_Id._** at ¶¶ 25B-D. Either way, Mr. Quinn was responsible for the writing of Exhibit 2.

Moreover, when evaluating preliminary objections to a complaint, "the court must accept as true all well-pleaded, material, and relevant facts **alleged** in the complaint[.]" **_Heldring_**, 151 A.3d at 641. The complaint does not need to provide proof of those allegations. **_See N. Forests_**, 130 A.3d at 35 ("The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if **ultimately proven**." (emphasis added) (citation omitted)); **_Discover Bank v. Stucka_**, 33 A.3d 82, 87 (Pa. Super. 2011) (citing **_Hess v. Fox Rothschild, LLP,_** 925 A.2d 798, 805–06 (Pa. Super. 2007)) (same). Thus, in a complaint, Appellant does not yet need to present evidence to support his factual averments, including whether Appellees had distributed the records. **_See_** TCM at 11.

of emotional distress, and we reinstate those claims.[27]   We affirm the trial

court's grant of demurrer as to all other counts.

_____

[27] In a footnote at the end of his brief to this Court, Appellant "also requests that the dismissal of the civil conspiracy claim be reversed, as that claim is dependent on the other claims [he] is alleging were erroneously dismissed." Appellant's Brief at 66 n.10.  In his reply brief, Appellant states that he "is not replying on the issue[] of . . . civil conspiracy as his opening brief more than adequately covers and rebuts [Appellees'] arguments."  Appellant's Reply Brief at 19 n.5.  Appellant presents no other argument about his civil conspiracy cause of action.

Claims are deemed meritless where the assertions therein are not explained, developed, or supported by the record factually or legally.  *In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) ("The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities." (internal citations and quotation marks omitted)); *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (explaining that an appellant's arguments must adhere to rules of appellate procedure, and "arguments which are not appropriately developed are waived"; arguments not appropriately developed include those where party has failed to cite any authority in support of contention).  As Appellant fails to cite any applicable law in support of his contention or to develop any additional argument, his request that the dismissal of the civil conspiracy claim be reversed does not merit relief.

Assuming we were to accept Appellant's two sentences as sufficient argument to preserve this issue for our review, we would still find that this challenge would fail.  Appellant's contention that his civil conspiracy claim was "dependent on the other claims [he] is alleging were erroneously dismissed," Appellant's Brief at 66 n.10, is inaccurate and misinterprets Appellees' preliminary objection.  Appellant alleged separate facts for the civil conspiracy count in the Complaint, independent from other causes of action.  The Complaint at 33-34 ¶¶ 113-118.  Additionally, Appellees' preliminary objection was not predicated upon the other claims being dismissed – *i.e.*, it was not that, if all other claims are dismissed, civil conspiracy must also be dismissed.  Instead, Appellees alleged that the Complaint failed to plead that they "act[ed] with a common purpose with another person" and did "an unlawful act, or [did] a lawful act by unlawful

*(Footnote Continued Next Page)*

Order affirmed in part and reversed in part.

President Judge Gantman joins this Memorandum.

Judge McLaughlin files a Concurring and Dissenting Statement.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/18

---

*(Footnote Continued)* ─────────────

means or for an unlawful purpose." Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 14-15 ¶¶ 69-70 (quoting **Grose v. P&G Paper Prods.**, 866 A.2d 437, 440-41 (Pa. Super. 2005)). The trial court agreed on the first point and did not address the second. TCM at 13-14. Even if the most liberal reading of Appellant's brief would result in Appellant's restored causes of action – the three invasion of privacy counts and IIED – being considered the required "unlawful acts," etc., Appellant has still failed to present any argument to this Court to counter the assertion in the preliminary objections that Appellees "did not act with a common purpose with another person." Prelim. Objs. of Appellees to the Complaint, 3/6/17, at 14-15 ¶¶ 69-70. This Court cannot consider any theories not presented to it by the parties. **See, e.g.**, **Commonwealth v. Colavita**, 993 A.2d 874, 891 (Pa. 2010); **Safe Harbor Water Power Corp. v. Fajt**, 876 A.2d 954, 966 n.13 (Pa. 2005). Therefore, without an additional theory presented to this Court by Appellant, the reinstatement of some of Appellant's causes of action does not redeem Appellant's claim for civil conspiracy.